Argued and submitted December 30, 2020, reversed and remanded March 17, petition for review denied August 26, 2021 (368 Or 515)

In the Matter of M. J. B.,
a Child.

T. W.
and S. F.,
*Guardians-Respondents,*
*and*

M. J. B.,
*Respondent,*

*v.*

C. L. K.
and S. L. B.,
*Appellants.*

Lane County Circuit Court
16JU05239; A174204 (Control)

In the Matter of M. S. B.,
a Child.

T. W.
and S. F.,
*Guardians-Respondents,*
*and*

M. S. B.,
*Respondent,*

*v.*

C. L. K.
and S. L. B.,
*Appellants.*

Lane County Circuit Court
16JU05240; A174205

483 P3d 1237

In this consolidated juvenile dependency case, mother and father appeal from a judgment denying father's motion to dismiss jurisdiction and terminate the court's wardships over their two children. The juvenile court's jurisdiction depended upon father being "out of state" and "unable to be a resource due to his criminal convictions and attendant consequences." In two combined assignments of error, both parents challenge the juvenile court's order, raising

related arguments that the juvenile court erred in denying father's motion to dismiss because, even though father had ameliorated the jurisdictional bases, the court erred in looking beyond those bases to make its determination. Children respond that parents did not satisfy their burden to prove that children were no longer exposed to a current threat of serious loss or injury due to conditions or circumstances expressly stated or fairly implied by the jurisdictional judgment. *Held*: Because the juvenile court based its decision to continue jurisdiction, at least in part, on facts extrinsic to the jurisdictional bases, the court's denial of father's motion to dismiss was reversed and remanded for the court to reconsider father's motion without reliance on those extrinsic facts of which father did not receive adequate notice.

Reversed and remanded.


Jay A. McAlpin, Judge.

Tiffany Keast, Deputy Public Defender, argued the cause for appellant S. L. B. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Erica Hayne Friedman argued the cause and filed the brief for respondent children.

George W. Kelly filed the brief for appellant C. L. K.

No appearance for respondents T. W. and S. F.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

JAMES, J.

Reversed and remanded.

Kamins, J., dissenting.

**JAMES, J.**

In this consolidated juvenile dependency case, mother and father appeal from a judgment denying father's motion to dismiss jurisdiction and terminate the court's wardships over their two children. The juvenile court's jurisdiction depended upon father being "out of state" and "unable to be a resource due to his criminal convictions and attendant consequences."[1] Both parents challenge the juvenile court's order, raising related arguments. Relying on *Dept. of Human Services v. J. C.*, 365 Or 223, 444 P3d 1098 (2018), father asserts that, because uncontested evidence established that father now lived in Oregon and that his last criminal conviction was in 2014, the safety risk posed by the factual bases that gave rise to dependency jurisdiction had been ameliorated. Mother, also relying on *J. C.*, contends that the juvenile court erred in denying father's motion to dismiss because the court looked beyond the specific jurisdictional bases alleged in the dependency petition to make its determination. Mother contends that, if there are presently any conditions or circumstances that endanger the children, they were not previously alleged in the dependency petition. Ultimately, both parents argue that the juvenile court erred in ruling that the jurisdictional bases applicable to father continued to exist. For the reasons discussed below, we agree and accordingly reverse.

The parties do not request that we exercise our discretion to engage in *de novo* review, and we decline to do so. ORS 19.415(3)(b); ORAP 5.40(8)(c) (we conduct *de novo* review only in "exceptional" cases). We assume the correctness of the juvenile court's explicit findings of historical fact if there is any evidence in the record to support them, and further, whether those findings, including nonspeculative inferences consistent with the findings, are legally sufficient to support

---

[1] The juvenile court also asserted jurisdiction over the children regarding their relationship with mother. Although mother supported father's motion to dismiss, mother did not file a motion of her own. On appeal, mother acknowledges that amelioration of the jurisdictional bases applicable to her was not pleaded below; therefore, the juvenile court correctly focused its inquiry on the amelioration of father's circumstances. Subsequently, the scope of both mother's and father's appeals are limited to the juvenile court's denial of father's motion to dismiss the jurisdictional bases applicable to him, and we do not assess the amelioration of the jurisdictional bases related to mother.

its ruling. *Dept. of Human Services v. N. P.*, 257 Or App 633, 640, 307 P3d 444, *adh'd to on recons*, 257 Or App 633 (2013). If the juvenile court did not expressly resolve a factual question, and resolution of that factual dispute was necessary to its ruling, we presume that the juvenile court implicitly made a finding consistent with its ruling. *Id.* Accordingly, the facts, consistent with the juvenile court findings and rulings, are set forth below.

Mother and father's children, J and S, were born in 2011 and 2012, respectively. At the time of the June 2020 hearing on father's motion to dismiss jurisdiction and terminate the wardships, the children were seven and eight years old.

In June 2016, the department filed dependency petitions regarding the children, who were living with mother at the time, while father lived in Vermont.

At that time, father was living in Vermont because he was on parole or probation for a driving while intoxicated (DUII) conviction in the state two years earlier, in 2014, and his supervising authority would not permit him to relocate to Oregon. Although he sought to have the children brought to Vermont, he was unsuccessful in doing so.

The juvenile court ruled that the children were within its jurisdiction regarding their relationship with mother because her "substance abuse interfere[d] with her ability to safely parent." As to father, however, while the petition to assert jurisdiction originally contained allegation (G), that father's "substance abuse remains a threat of harm and requires continued treatment," that allegation was dismissed.

Rather than substance abuse, the allegations against father were set forth in paragraphs (F) and (H):

"(F)   The father is out of state and unable to be a resource

"*****

"(H)   The father['s] criminal behaviors and attendant consequences interfere with his ability to safely parent."

However, and critically for purposes of our analysis here, allegation (H) was dismissed by the department. Allegation (F) was altered by the court to reflect the proof at the jurisdiction hearing to the following:

"(F)  The father is out of state and ~~unable to be a resource~~ is currently unable to be a resource due to his criminal convictions and attendant consequences."

The record reflects that the terms of father's supervision included requirements that he complete alcohol treatment, which he did via one-on-one counseling, and submit to urine and breath testing. Father understood that, after completing counseling, the conditions of his supervision allowed him to "socially drink" as long as it did not get him "in any trouble."

In September 2018, the juvenile court entered orders establishing guardianships for the children with maternal grandfather, T. W., and grandmother, S. F. Between that time and the time of the hearing at issue, father conducted video chats with the children twice per week, and, with the permission of his Vermont supervising authority, father came to Oregon three times for visits with the children, during which times he stayed in the guardians' home.

In January 2020, after completing the requirements of his Vermont supervision, father returned to Oregon to seek custody of the children. The parents married upon father's return.

In March 2020, father filed a motion to dismiss jurisdiction and terminate the wardships. The motion alleged:

"In this case, the original basis of jurisdiction for the father was the father is out of state and unable to be a resource due to his criminal convictions and attendant consequences. The declaration of counsel shows that [father] has completed parole and probation requirements in the State of Vermont and has relocated to Oregon. This basis of jurisdiction has been ameliorated. Consequently, this case should be dismissed."

At the hearing on the motion to dismiss, father initially testified that he had not drank alcohol since 2014, but later clarified that he meant that he had not "abused" alcohol

since 2014, but had engaged in some social drinking since that time. At the time of the June 2020 hearing, father was in diversion for a misdemeanor citation for driving without a license, which he received in September 2019 while driving to work in Vermont. Father no longer drove and instead he used Lyft, public transportation, or mother provided transportation with her vehicle.

Although mother did not separately file a formal motion to dismiss the jurisdictional bases and terminate the wardships, at the hearing, she supported father's motion. Mother's testimony revealed that she had graduated from a drug treatment program, completed a parenting training class, and has a steady job. Her employer testified that she is always on time, is reliable, and has never exhibited signs of drug use.

T. W. testified that "most if not all" of father's contact with the children "[went] well." T. W., a law enforcement officer, never reported any "bad things" happening in visits. S. F., however, thought that father used slurred words and "looked drunk" during calls with the children, but guardians never felt it necessary to stop a visit between father and the children. T. W. testified that, in approximately July 2019, father called guardians' home with "slurred speech," which father denied. According to T. W., in August 2019, father told T. W. that he was "still drinking a half case a day."

The juvenile court denied father's motion, reasoning that the jurisdictional obligation incorporates the "entire picture" of threat of harm to the children, which included father's noncredible testimony about his drinking habits.

"THE COURT:   I think it is an open question about how much of the factual basis of the jurisdictional allegation the Court is allowed to get to and whether it does—is purely from a language of the jurisdictional basis, or whether it looks a little bit behind the curtain and looks at the facts.

"I find that the Court should start with the language that the parent either admitted or was found, and that that can be supplemented by the record and I think reasonable inferences. And in fact I didn't get everyone in this case did just that. [*sic*] They just want to draw the line at different

places, right? So Mom and Dad want me to draw the line at the factual basis of the jurisdictional obligation was housing and letting them come to Oregon. [Children's counsel] wants me to expand that.

"I think [children's counsel's] reading is the more appropriate one to apply in this case. First, starting just with the factual basis itself, it's the Father's out of state and is currently unable to be a resource due to his criminal convictions, plural, and attending consequences.

"Father was technically only limited from leaving Vermont because of a conviction, but that conviction was built up under a number of other previous convictions, and I think the plain language of the jurisdictional obligation incorporates that entire picture.

"And the testimony was is [*sic*] that those convictions were for driving under the influence, that were repeated on each—on themselves, and so I think the plain language of the jurisdictional obligation, plus looking at the factual basis of the jurisdictional obligation does warrant considering whether the Father has ameliorated that jurisdictional basis and a more broad sense then just whether is his [*sic*] physically now in Oregon.

"I think the same thing goes with the attending consequences. That is consequences included some period of incarceration, they included some period of supervision in which his freedom to move was excluded, for those attending consequences also resulted in geographic, and for lack of a better word, emotional distance from his children. And so I think it's appropriate to consider that as well as an intended consequence.

"* * * * *

"And so looking at it at [*sic*] a bigger picture, I don't find Father has ameliorated the jurisdictional basis. I agree with [children's counsel] that I found his testimony as to the amelioration of that jurisdictional basis to be less than fully credible. The testimony that I remember—I remember quite well was that he hadn't had anything to drink since 2014, and then that has expanded and it kind of expanded more and more as we went on today, and there were explanations and excuses that I don't find credible.

"So I don't find the Father's met their [*sic*] burden of proof. I don't think I need to make any determination about

Mother ameliorating her jurisdictional basis because that's not a question that's in front of me today. So the guardianship will continue and the wardship of the Court will continue."

This timely appeal followed. Asserting two combined assignments of error, father contends that undisputed evidence presented at the hearing on father's motion to dismiss established that father now lived in Oregon and that his last criminal conviction was in 2014; thus, father argues, the jurisdictional bases have been ameliorated, requiring dismissal of the case. In mother's single assignment of error, she asserts that the juvenile court erred in denying father's motion to dismiss because the court looked beyond the specific jurisdictional bases alleged in the dependency petition to make its determination, including the emotional distance between father and the children caused by geographical distance and father's testimony about his present use of alcohol, which changed during the trial. Mother contends that, if there are presently conditions or circumstances that endanger the children that were not previously alleged and proved, the dependency petition must be amended to reflect those additional bases, thus triggering the burden on the Department of Human Services (DHS) to prove those additional bases as opposed to a burden on father to disprove them as part of a motion to dismiss.

Children respond that the parents' reading of *J. C.* is too narrow, and rather, the burden was on the parents to prove that the children were no longer exposed to a current threat of serious loss or injury due to conditions or circumstances expressly stated or fairly *implied* by the jurisdictional judgment. Although children acknowledge that the juvenile court's ability to rely on particular facts implied by the jurisdictional bases is constrained by a parent's right to due process, children nevertheless contend that the jurisdictional bases encompassed father's alcohol use because it was implied by the jurisdictional judgment. Therefore, children contend, the court properly considered facts beyond the express words of the jurisdictional bases in its denial of father's motion to dismiss. Guardians did not file an answering brief or appear for oral argument.

As we have repeatedly emphasized, children in Oregon "'are individuals who have legal rights.'" *Dept. of Human Services v. T. L.*, 279 Or App 673, 677, 379 P3d 741 (2016) (quoting ORS 419B.090(2)(a)). Those rights include "the right to permanency with a safe family; the right to freedom from physical, sexual or emotional abuse or exploitation; and the right to freedom from substantial neglect of basic needs." *Id.* (internal quotation marks omitted). Oregon's dependency statutes serve to "protect and enforce those rights while simultaneously safeguarding parents' Fourteenth Amendment liberty interest in parenting their children." *Id.* (citing ORS 419B.090).

A juvenile court has dependency jurisdiction over a child whose "condition or circumstances are such as to endanger" the child's welfare. ORS 419B.100(1)(c). A child's welfare is "endangered" within the meaning of the statute if the child is exposed to a "current threat of serious loss or injury" and that threat is "reasonably likely to be realized." *Dept. of Human Services v. G. J. R.*, 254 Or App 436, 443, 295 P3d 672 (2013); *see also Dept. of Human Services v. C. Z.*, 236 Or App 436, 440, 236 P3d 791 (2010) ("The key inquiry in determining whether conditions or circumstances warrant jurisdiction is whether, under the totality of circumstances, there is a reasonable likelihood of harm to the welfare of the child." (Internal quotation marks, brackets, and citation omitted.)).

In a petition alleging jurisdiction, the proponent "must set forth in ordinary and concise language * * * the facts that bring the child within the jurisdiction of the court, *including sufficient information to put the parties on notice of the issues in the proceeding.*" *Dept. of Human Services v. J. R. L.*, 256 Or App 437, 446-47, 300 P3d 291 (2013) (citing ORS 419B.809(4)(b) (emphasis in *J. R. L.*)). When a dependency case is initiated, the proponent of jurisdictional bases under ORS 419B.100(1)(c) bears the burden not only to prove the existence of conditions or circumstances that present a threat of harm to the child, but also that the threat of harm is current, nonspeculative, and that there is a "connection between the allegedly risk-causing conduct and the harm to the children." *Dept. of Human Services v. F. Y. D.*, 302 Or App 9, 19, 459 P3d 947 (2020). Accordingly, we have repeatedly

emphasized the importance of the language used to allege the basis for jurisdiction. "[T]he alleged and proven jurisdictional basis becomes critical language—arguably *the* critical language—around which the entire juvenile case orbits." *Dept. of Human Services v. L. A. K.*, 306 Or App 706, 716, 474 P3d 925 (2020) (emphasis in *L. A. K.*).

The court determines whether the facts alleged in the petition, if proved, are sufficient to establish jurisdiction. ORS 419B.100. If the juvenile court concludes that the proponent of dependency jurisdiction has met its burden, the court shall make that child a ward of the court. ORS 419B.328(1). "It is the pleaded and proven jurisdictional basis that delineates the authority of the court." *L. A. K.*, 306 Or App at 716-17. Further, it is "the pleaded and proven jurisdictional basis [that] sets the expectation of services provided by DHS." *Id.*

As the Oregon Supreme Court has made clear, "[i]f circumstances change and a ward would be endangered by a return to a parent even though original factual bases for the juvenile court's jurisdiction no longer exist, the court may be able to assert jurisdiction based on the new circumstances." *J. C.*, 365 Or at 235.

> "Thus, if a court originally asserts jurisdiction over a child based on endangerment due to a parent's controlled substance use, but circumstances change and give rise to additional reasons the child would be endangered if returned to the parent, the juvenile court could assert jurisdiction over the child based on those additional reasons and the parent's elimination of the problems resulting from the parent's controlled substance use would not be enough to terminate the court's wardship and jurisdiction over the child."

*Id.* Importantly, however, the Oregon Supreme Court noted the possibility of asserting a new jurisdictional basis within the procedural confines of ORS 419B.809(6), which provides that "[t]he court on motion of an interested party or on its own motion, may at any time direct that the petition be amended." Thus, while the pleaded and proven jurisdictional bases govern the juvenile case, those bases may evolve over time, but only by following the procedural channels of ORS 419B.809(6), which requires a motion to amend—an

important part of the due process to which parents are entitled.

The court retains jurisdiction only so long as the pleaded and proven jurisdictional bases continue to "pose a current threat of serious loss or injury, and there [is] a reasonable likelihood that the threat will be realized." *Dept. of Human Services v. J. V.-G.*, 277 Or App 201, 212, 370 P3d 916 (2016). "It is axiomatic that a juvenile court may not continue a wardship 'if the jurisdictional facts on which it is based have ceased to exist.'" *State v. A. L. M.*, 232 Or App 13, 16, 220 P3d 449 (2009) (quoting *State ex rel Juv. Dept. v. Gates*, 96 Or App 365, 372, 774 P2d 484, *rev den*, 308 Or 315 (1989)). When the basis for jurisdiction has ceased to exist, then the juvenile court must terminate the wardship and dismiss the case, thereby returning the child to the care and legal custody of the child's parents or legal guardians. *Dept. of Human Services v. A. R. S.*, 258 Or App 624, 634, 310 P3d 1186 (2013), *rev dismissed*, 355 Or 668 (2014).

When a parent moves to dismiss jurisdiction after the court has changed the child's permanency plan from reunification to some other plan, the parent bears the burden of proving that the jurisdictional bases no longer exist. *T. L.*, 279 Or App at 690 ("[O]nce a permanency plan has been changed away from reunification, a parent seeking dismissal of dependency jurisdiction must prove that the bases for jurisdiction no longer pose a current threat of loss or harm to the child that is reasonably likely to be realized ***."). As we have explained, a parent's motion to dismiss dependency jurisdiction "involves a two part inquiry." *T. L.*, 279 Or App at 684. First, the court "must determine whether the original bases for jurisdiction continue to pose a current threat of serious loss or injury." *Id*. at 685. Only if the answer to that first question is "yes" does the court proceed to the second part of the inquiry—assessing "the likelihood that that risk will be realized." *Id*.

With that framework in mind, we turn to the facts in this case. Here, in father's motion to dismiss, father contended that he had ameliorated the jurisdictional bases that he was "out of state" and "unable to be a resource due to his criminal convictions and attendant consequences." Since he

had moved back to Oregon, father argued, those jurisdictional bases no longer pose a risk to his children. The juvenile court denied father's motion to dismiss those jurisdictional bases, relying on father's alcohol consumption, in light of his previous DUII convictions, and the fact that father's testimony on the subject had changed during the course of the hearing. On appeal, father argues that the juvenile court erred in its reliance on evidence extrinsic to the jurisdictional bases to make that determination. Children respond that those extrinsic facts were fairly *implied* by the jurisdictional judgment, thus providing father adequate notice of continued jurisdictional bases founded upon those implied allegations. We agree with father that the court erred in relying on evidence extrinsic to the jurisdictional bases.

In *J. R. L.*, we specified that juvenile courts are authorized to disregard errors or defects in petitions or other documents or proceedings only when the error or defect "does not affect the substantial rights of the adverse party." 256 Or App at 448; ORS 419B.857(2). Under the test articulated in *Dept. of Human Services v. G. E.*, 243 Or App 471, 481, 260 P3d 516, *adh'd to as modified on recons*, 246 Or App 136, 265 P3d 53 (2011), to "avoid affecting the substantial rights of a parent, a juvenile court cannot base its jurisdictional decision on facts that depart from the petition or jurisdictional judgment when neither the petition nor the jurisdictional judgment would put a reasonable parent on *notice* of what the parent must do to prevent the state from asserting or continuing jurisdiction over the child." *J. R. L.*, 256 Or App at 448 (emphasis added).

As we explained in *J. R. L.*, the relevant inquiry to determine whether allegations extrinsic to those expressly alleged in the jurisdictional petition can nevertheless be fairly implied is whether parents received adequate *notice*. *Id.* (holding that the juvenile court improperly relied on facts that were extrinsic to jurisdictional judgment and for which mother lacked adequate notice). Accordingly, we examine the bases for a juvenile court's decision and the jurisdictional judgment and determine whether the judgment would put a reasonable parent on notice that those bases would be used to continue jurisdiction over a child and to change the permanency plan for a child. *Id.*

In *G. E.*, we addressed whether a parent was given adequate notice of the factual bases on which the court continued jurisdiction and wardship. In that case, the mother argued that she had ameliorated all the circumstances in the jurisdictional judgment, namely, that the mother "needed to find safe housing where dangerous people did not live or visit and that was not below community standards of sanitation, and that she needed to participate in recommended substance abuse treatment." 243 Or App at 482; *see also*, *J. R. L.*, 256 Or App 437. Noting that "[i]t is axiomatic" that "a juvenile court may not continue a wardship based on facts that have never been alleged in a jurisdictional petition," we concluded that determination that the mother lacked adequate notice that her failure to address newly specified safety concerns (related to her inattention when with the child) would allow the court to continue jurisdiction and wardship. *G. E.*, 243 Or App at 483 (citing ORS 419B.809(4)(b)).

Here, in asserting jurisdiction, the juvenile court explicitly struck the reference to father's "criminal behaviors" and rewrote the stated basis to focus solely on father's presence out of state as a consequence of his "criminal convictions" and "attendant consequences." The effect of that change was to squarely place the basis for jurisdiction not on father's *behavior*, but upon his presence in Vermont as a result of his convictions. The language used by a court to assert jurisdiction over a family has meaning. It delineates the authority of the court, it sets the expectation of services by DHS, and it places the parents and the public on notice of what needs to be ameliorated to terminate the wardship. The department's contention that, regardless of what was actually pleaded and proven, separate and alternative bases can be unspoken yet "fairly implied" in the jurisdictional judgment is contrary to ORS 419B.857.

In denying father's motion to dismiss those jurisdictional bases, the juvenile court relied on father's alcohol consumption, in light of his previous DUII convictions, and the fact that father's testimony on the subject had changed during the course of the hearing. From this limited record, we cannot conclude that father was provided adequate notice

that facts pertaining to his current alcohol consumption were a part of the jurisdictional basis—especially a basis that explicitly rejected an allegation based on "behavior."

If a juvenile court erroneously relied on facts extrinsic to the jurisdictional bases to continue jurisdiction, the remedy is for the judgment to be reversed and remanded so the juvenile court can reconsider the motion to dismiss without reliance on those extrinsic facts. *J. R. L.*, 256 Or App at 452 (so ordering).

Because the court based its decision to continue jurisdiction, in large part, on father's alcohol use, a fact extrinsic to the jurisdictional bases, and because it is unclear whether the court would have reached the same conclusion—that father continued to be "unable to be a resource due to his criminal convictions and attendant consequences"—without considering jurisdictional bases for which father had not received adequate notice—we cannot conclude that the court's error was harmless. *See Dept. of Human Services v. N. T.*, 247 Or App 706, 718, 271 P3d 143 (2012) (concluding that, "because the court did not indicate that mother's and father's lack of progress in addressing their substance abuse, mental health, and housing issues *** was independently sufficient to warrant changing the plans for the children to adoption," the error was not harmless); *see also*, *J. R. L.*, 256 Or App at 452. For that reason, we reverse the court's denial of father's motion to dismiss and remand reconsideration in light of our opinion.

Reversed and remanded.

**KAMINS, J.,** dissenting.

I respectfully dissent from the majority opinion because I disagree that father's alcoholism was a fact extrinsic to the jurisdictional basis of the juvenile court. Although father's alcoholism was not explicitly named in the language of the jurisdictional judgment, it was "fairly implied," providing sufficient notice to father that it was part of the basis for jurisdiction. *See Dept. of Human Services v. A. R. S.*, 256 Or App 653, 660, 303 P3d 963, *rev den*, 354 Or 386 (2013) (trial court can continue jurisdiction on basis "fairly implied" by jurisdictional judgment). Moreover, the record reflects that

father had actual notice of the importance of addressing his alcoholism in ameliorating the basis for jurisdiction.

As a preliminary matter, I agree with the majority about the importance of precision in articulating the basis for the juvenile court's jurisdiction. As we have previously observed, "the wording of the jurisdictional basis set forth in the judgment *matters*." *Dept. of Human Services v. L. A. K.*, 306 Or App 706, 717, 474 P3d 925 (2020) (emphasis in original). "The alleged and proven jurisdictional basis becomes critical language—arguably *the* critical language—around which the entire juvenile case orbits." *Id.* at 716 (emphasis in original). The jurisdictional basis is what delineates the authority of the juvenile court and provides the lens through which we evaluate the reasonableness of DHS's efforts. *Id.* at 716-17; *Dept. of Human Services v. D. M. R.*, 301 Or App 436, 443, 455 P3d 599 (2019). It also provides a parent notice "as to what, exactly, he or she is supposed to be doing in order to terminate the authority of the state to act as the child's surrogate parent." *Dept. of Human Services v. G. E.*, 243 Or App 471, 480, 260 P3d 516, *adh'd to as modified on recons*, 246 Or App 136, 265 P3d 53 (2011).

Accordingly, it is *essential* that DHS takes care, not only in crafting the language used in the basis for jurisdiction, but also in ensuring that the language continues to reflect the current risk to the children's welfare over the life of a case. Because "dependency cases involve complicated human lives and relationships, and *** the juvenile court may be involved over a period of several years," the basis for the juvenile court's jurisdiction often evolves from what was specified in the original judgment. *L. A. K.*, 306 Or App at 717. In such cases, DHS must remain vigilant and seek to amend the jurisdictional basis when appropriate. Failing to do so can result in the juvenile court losing legal authority to continue overseeing the case or the parents being deprived of the resources necessary to reunite with their children.

And nowhere is the need for active management of the jurisdictional basis more evident than in cases where a child's permanency plan later changes from reunification to another placement. "[O]nce a permanency plan has been changed away from return to parent to adoption,

guardianship, or other permanent placement, the legislature has made clear that DHS's primary job is to work to implement that alternative plan." *Dept. of Human Services v. T. L.*, 279 Or App 673, 687-88, 379 P3d 741 (2016). Critically, DHS no longer works to reunify the family or monitor the parents' progress. *Id.* at 688. Accordingly, if the basis for jurisdiction requires amendment once the permanency plan changes, that responsibility is likely to fall on another interested party, such as a guardian. And guardians are ill-equipped to shoulder that burden. Guardians are frequently family members who lack the knowledge, resources, or incentive to make the necessary amendments to manage the case in DHS's stead. As a result, it is all the more important for DHS to ensure that the jurisdictional basis specified in the judgment accurately reflects the risk to a child's welfare before the child's permanency plan changes.

All of that said, here, the language of the jurisdictional basis still provided father sufficient notice of the need to address his alcoholism. As the majority explains, a juvenile court's decision to continue jurisdiction based on facts that depart from the petition is permissible so long as it does not "substantially affect a parent's rights." *G. E.*, 243 Or App at 481. To avoid substantially affecting a parent's rights, the jurisdictional judgment must provide the parent notice "as to what he or she must do in order to prevent the state from assuming or continuing jurisdiction over the child." *Id.* Thus, a juvenile court's basis for jurisdiction includes more than just the specific facts and circumstances listed in the judgment of jurisdiction; it also includes the "conditions or characteristics that those facts demonstrate or exemplify" if a reasonable parent would have had notice that the jurisdictional basis encompassed them. *Id.* at 479, 481.

The majority concludes that a reasonable parent would not have understood father's alcoholism to be part of the basis for jurisdiction because the juvenile court "explicitly struck the reference to father's 'criminal behaviors' and rewrote the stated basis to focus solely on father's presence out of state as a consequence of his 'criminal convictions' and 'attendant consequences.'" 310 Or App at 92. In the majority's view, those amendments "squarely place the basis for

jurisdiction not on father's *behavior*, but upon his presence in Vermont as a result of his conviction." *Id.* (emphasis in original). I disagree.

The majority is correct that the only specific circumstance described in the basis for jurisdiction is father's inability to leave Vermont, but the basis for jurisdiction also extends to the condition that that circumstance exemplifies—namely, father's alcoholism. Father's alcoholism was the reason for his multiple DUII convictions and probation, the reason he underwent substance abuse treatment, the reason he was "unable to be a resource" in parenting his children, and, most importantly, the reason he was not permitted to leave Vermont. The replacement of "criminal behavior" with "conviction" and "attendant consequences" does nothing to alter the fundamental role that father's alcoholism played in that conviction, let alone render father unaware that his substance abuse played a major obstacle to reunification. Indeed, it seems an understandable edit—the juvenile court was less concerned with the criminal behavior itself (driving under the influence of alcohol) and more concerned with the condition exemplified by the conviction—dependence on alcohol.

Importantly here, the judgment taking jurisdiction over the children would have confirmed to a reasonable parent that addressing dependence on alcohol was critical to ameliorating the basis for jurisdiction. *See Dept. of Human Services v. M. M. B.*, 253 Or App 431, 440, 290 P3d 891 (2012), *rev den*, 353 Or 280 (2013) (concluding that, when the juvenile court ordered DHS and the parent to enter into and to abide by a written action agreement and the court attached that document to the jurisdictional judgment, the parent was on notice that her progress could be measured based on the action agreement). In the judgment of jurisdiction and disposition on August 22, 2016, the juvenile court ordered father to "comply with all terms and conditions of alcoholic probation * * * (4) participate in and successfully complete drug and alcohol treatment with a DHS/CWP approved provider, if requested by his supervising probation/parole officer, follow any and all recommendations for treatment, including relapse prevention and/or aftercare; * * * and demonstrate a drug-free lifestyle." In later judgments,

the court ordered father to "[p]articipate in and successfully complete Substance Abuse treatment with a DHS approved provider." Every judgment also provided that father was to "[s]ubmit to drug and alcohol testing, if requested by his supervising probation/parole officer."

The permanency judgment on January 17, 2018, also contained a section titled "Case Compliance and Progress" with notes about any progress that father was making toward reunification. In those notes, one condition listed as a barrier to reunification was the fact that the children could not be placed with father in Vermont because father was denied a home study required under the Interstate Compact for the Placement of Children (ICPC). According to DHS records, one of the primary reasons that father was denied an ICPC study was his "extensive *** substance abuse histor[y]." Knowing that the ICPC study was critical to reunification and that it had been denied because of his substance abuse problems should have put father on notice of the importance of addressing his alcoholism in ameliorating the basis for jurisdiction.

In addition to putting a reasonable parent on notice, the record also reflects that father had actual notice of the role that his alcoholism played in the basis for jurisdiction. During the hearing on father's motion to dismiss jurisdiction, the children's aunt testified that father had told her during a recent family camping trip that "he wanted to stop [drinking] to be able to get the girls back." Similarly, T. W., one of the children's guardians, testified that, after confronting father about how he had been drunk on a phone call with one of the children, father admitted that he was "still drinking a half case a day" and that he needed "to get [his] shit together." Father's comments evince an understanding of the problematic role that alcohol played in his relationship with his children and of the need to address it in order to regain custody.

In sum, although father's alcoholism was not expressly listed as one of the circumstances necessitating the juvenile court's jurisdiction, it was fairly implied by the jurisdictional judgment. A reasonable parent in father's position would have understood his alcoholism to be part

of the basis for jurisdiction and the record indicates that father himself had actual notice of the need to address his drinking. So understood, the record is sufficient to support the trial court's determination that the jurisdictional basis that gave rise to dependency jurisdiction as to father had not been ameliorated. I respectfully dissent.