Argued and submitted September 17, reversed and remanded
November 24, 2021

In the Matter of J. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

V. M.,
*Appellant.*

Columbia County Circuit Court
19JU08971; A175491 (Control)

In the Matter of K. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

V. M.,
*Appellant.*

Columbia County Circuit Court
19JU08972; A175492

502 P3d 773

In this consolidated juvenile dependency case, mother appeals the juvenile court judgments denying her motion to dismiss jurisdiction over her children, J and K, and changing the children's permanency plan from reunification to guardianship. Mother argues that the juvenile court erred when it denied her motion to dismiss jurisdiction as untimely. She also argues that the juvenile court erred when it denied her motion on the merits, because the court relied, at least in part, on facts extrinsic to the jurisdictional judgment. Similarly, mother argues that the juvenile court erred by relying, at least in part, on facts extrinsic to the jurisdictional judgment when it changed the children's permanency plan from reunification to guardianship. *Held*: Under the procedure outlined in *Dept. of Human Services v. T. L.*, 279 Or App 673, 688, 379 P3d 741 (2016), mother could move to dismiss jurisdiction "at any time" prior to termination of parental rights; therefore, the juvenile court erred in denying her motion as untimely. Additionally, in denying mother's motion to dismiss jurisdiction on its merits, and in changing the permanency plan, the juvenile court erred by relying, at least in part, on facts that were neither explicitly stated nor fairly implied by the jurisdictional judgment.

Reversed and remanded.

Michael T. Clarke, Judge.

Holly Telerant, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Hadlock, Judge pro tempore.

TOOKEY, J.

Reversed and remanded.

**TOOKEY, J.**

In this consolidated juvenile dependency case, mother appeals the juvenile court judgments denying her motion to dismiss jurisdiction over her children, J and K, and changing the children's permanency plan from reunification to guardianship. On appeal, mother raises several assignments of error. We write to address only her combined first and second and combined eleventh and twelfth assignments of error.

In her combined first and second assignments of error, mother argues, among other points, that the juvenile court erred when it denied her motion to dismiss jurisdiction as untimely. She also argues that the juvenile court erred when it denied her motion on the merits, because the court relied, at least in part, on facts extrinsic to the jurisdictional judgment. Similarly, in her combined eleventh and twelfth assignments of error, she argues that the juvenile court erred when it changed the children's permanency plans from reunification to guardianship, because, among other reasons, it relied on facts extrinsic to the jurisdictional judgment. For the reasons that follow, we conclude that the juvenile court erred in relying on facts extrinsic to the jurisdictional judgment in denying mother's motion to dismiss and in changing the permanency plan. Accordingly, we reverse and remand.[1]

In reviewing the juvenile court's decision whether to dismiss jurisdiction, "we are bound by the court's explicit and implicit findings of historical fact unless there is no evidence in the record to support them, but we review the court's ultimate legal conclusion regarding whether to dismiss or not for legal error." *Dept. of Human Services v. D. M.*, 248 Or App 683, 685, 275 P3d 971 (2012). "Whether a juvenile court erred by relying on facts extrinsic to a jurisdictional judgment is a legal question that we review for errors of law." *Dept. of Human Services v. T. L.*, 287 Or App 753, 755, 403 P3d 488 (2017) (internal quotation marks omitted).

_____

[1] We reject without discussion mother's third through sixth assignments of error, in which she argues that the juvenile court erred by admitting hearsay evidence at the permanency hearing under ORS 419B.325. As for mother's seventh through tenth assignments of error, our disposition in this case obviates the need to address those assignments of error.

Mother in this case is the adoptive mother and great-grandmother of J and K (the children) and lives in Nevada. Sometime in 2014 or 2015, mother arranged for the children to live with relatives, Laura and Mark Burkhart (the Burkharts), initially in California and then in Oregon. In December 2019, the children were removed from the Burkharts' home in Oregon due to circumstances that endangered the children's welfare, and they were placed in substitute care. In February 2020, the juvenile court entered a judgment taking jurisdiction over the children based on mother's admission to the following allegations:

> "The mother has not parented the children for over four (4) years, during this time but without a legal custody agreement the children were in the care of relatives who used excessive physical discipline and unsafe parenting practices. Over the last year, the mother did not visit in person while the children were residing in an unsafe situation and were placed at risk of harm. Additionally, the children do not currently want to return to the care of their mother and the family needs services to repair their relationship."

On December 24, 2020, DHS filed a notice indicating it would seek to change the permanency plan from reunification to guardianship. On January 1, 2021, mother moved to dismiss the juvenile court's jurisdiction over the children three days before a scheduled permanency hearing, arguing that the factual bases for jurisdiction had ceased to exist. At the January 4, 2021, permanency hearing, DHS objected to mother's motion to dismiss as untimely, arguing that three days was not enough time for DHS to prepare a response. Mother's counsel responded that, if DHS was not prepared, the court should "schedule this for a time at which the State can be prepared." After a brief discussion, the juvenile court declined to rule on mother's motion to dismiss, explaining it would "make that decision later," and proceeded to hold a permanency hearing.

At the permanency hearing, testimony was taken from a DHS caseworker, a CASA, and mother. Additionally, several exhibits were admitted into evidence, including the DHS caseworker's report and a Nevada ICPC report about mother. The DHS caseworker testified, among other things, that "when the kids originally went to live with the

Burkharts, [mother] had stated that they went for health reasons." And the caseworker's report noted that "given [mother's] age, biologically, she may not have the physical and mental capability to take care of the children until they are 18," and that the Nevada ICPC report referred to "documented health concerns regarding [mother]."

About two weeks after the hearing, the court issued a letter opinion denying mother's motion to dismiss, both as to timeliness and on the merits, and entered a judgment changing the permanency plan for the children from reunification to guardianship. The letter opinion stated, in relevant part,

"[T]he Court sustains ODHS's objection to the Motion to Dismiss as untimely. Mother's Motion to Dismiss is denied.

"Nonetheless, this court, in its constant concern for Mother's rights to due process and fundamental fairness, has reviewed the jurisdiction argument raised in the Motion to Dismiss, and after hearing argument from all parties, and receiving competent testimony from the ODHS child welfare worker, a CASA, and the Mother, the Court has determined that the conditions and circumstances that formed the basis for jurisdiction continue to present a current risk of serious loss or injury to the children that is likely to be realized in the absence of the court's oversight. Eighty-four or 85-year-old Mother has an extensive medical history, and these health issues in part caused Mother to place the children with the relatives that were abusing the children over 5 years ago. Mother does not seem to recognize that her health issues pose a threat to those who might be in her care, though the people around Mother recognize and are concerned about Mother's health and her ability to care for children. Mother also does not seem able to manage the care of the children. Specifically, managing the children when they were approximately 3 and 4 years old, respectively, became too much for Mother that she turned them over to relatives who were abusive. Nothing has changed with regard to the management requirements of the children, other than that the children are approximately 12 and 13 years old, respectively. It is believed that teenage children are often more difficult to manage, and there is no evidence that Mother's caregiving skills have improved or that she has taken any steps to improve her caregiving skills since she was caring for the children as

3- and 4-year-olds. If Mother cannot manage her children again, either because caregiving is too large of a job or because Mother's health issues make it impossible to manage the children, Mother's support system who would be available to care for the children is problematic.

"* * * * *

"The Court has now entered the Permanency Judgment after reviewing the record herein[.]"

Mother now appeals the resulting judgments. She argues, among other points, that the juvenile court erred in denying her motion to dismiss as untimely, because "mother was not required to move to dismiss earlier than she did," and "[n]o statute or caselaw prescribes a time limit for the filing of a motion to dismiss." She also argues that the court erred in denying her motion to dismiss on the merits, because, among other reasons, the court erroneously relied, at least in part, on facts extrinsic to the adjudicated bases for jurisdiction; namely, "the court relied on [DHS's] concerns related to mother's age and health." Mother similarly argues that the court erred by relying on those same extrinsic facts in changing the permanency plan.

We begin by addressing the juvenile court's denial of mother's motion to dismiss jurisdiction as untimely. As noted above, mother argues that the juvenile court erred when it denied her motion as untimely, because "no statute or caselaw prescribes a time limit for the filing of a motion to dismiss." DHS responds that mother's motion to dismiss was untimely because it was filed three days before the permanency hearing, thereby depriving DHS of "the necessary 14-day opportunity to file a response" provided under UTCR 5.030(1).

We agree with mother; we know of no statute prescribing time limits for a motion to dismiss the juvenile court's jurisdiction. The rule cited by DHS—*i.e.*, UTCR 5.030(1)—pertains only to time limits for *responding* to motions; it does not address time limits for *filing* motions.[2]

---

[2] UTCR 5.030(1) provides:

"An opposing party may file a written memorandum of authorities in response to the matters raised in any motion not later than 14 days from the date of service or the date of filing of the motion, whichever is later."

As we have previously observed, the legislature "has not spoken about motions to dismiss jurisdiction *at all*." *Dept. of Human Services v. T. L.*, 279 Or App 673, 688, 379 P3d 741 (2016) (emphasis added).

In *T. L.*, the father appealed an order denying a motion to dismiss jurisdiction over his child. The parties' arguments required that we address, among other questions, "whether a motion to dismiss juvenile court jurisdiction *** is legally cognizable after the permanency plan has been changed away from reunification." *Id.* at 686. In answering that question, we explained that the legislature's silence on the matter "leaves it to us to devise a way to best effectuate the legislature's intent." *Id.* at 688-89 (citing *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 185, 796 P2d 1193 (1990) (stating that court "may fashion an appropriate procedure" where the legislature itself did not supply a procedure)). In so doing, we explained that a "parent can ask for, and generally is entitled to receive, a permanency hearing 'at any time'" prior to termination of parental rights, *T. L.*, 279 Or App at 689 (quoting ORS 419B.470(5)), which "suggests that the legislature intended that a parent whose rights have not been terminated would be able to attempt, at any time, to prove that the permanency plan should be changed back to" reunification, *T. L.*, 279 Or App at 689. As relevant here, we also explained that "[p]ermitting a parent to move to dismiss jurisdiction on the ground that the child can safely return home *at any time* up until termination of parental rights" was similarly consistent with that intent. *Id.* (emphasis added).

Here, mother's parental rights had not been terminated when, three days before the scheduled permanency hearing, she moved to dismiss the juvenile court's jurisdiction, arguing that the factual bases for jurisdiction had ceased to exist. Thus, the timing of mother's motion to dismiss jurisdiction complied with the procedure outlined in *T. L.* Accordingly, we conclude that the trial court erred when it denied mother's motion to dismiss jurisdiction as untimely.[3]

---

[3] Because mother could move for dismissal of jurisdiction "at any time," *T. L.*, 279 Or App at 689, as stated above, we conclude that the juvenile court therefore

Next, we turn to the juvenile court's denial of mother's motion to dismiss jurisdiction on its merits. As noted above, mother argues that the juvenile court erred when it denied her motion, because the court relied, at least in part, on facts extrinsic to the jurisdictional judgment—*i.e.*, facts about mother's age and health issues.

"Under ORS 419B.100(1)(c), the juvenile court has jurisdiction over a child whose condition or circumstances are such as to endanger the welfare of the child." *Dept. of Human Services v. T. D. G.*, 301 Or App 465, 472, 455 P3d 591 (2019) (internal quotation marks omitted). To continue its jurisdiction over a child, "the jurisdictional bases—*i.e.*, the conditions or circumstances—must continue to pose a current threat of serious loss or injury, and there must be a reasonable likelihood that the threat will be realized." *Id.* at 473 (internal quotation marks omitted). In other words, the court's jurisdiction over a child "cannot continue if the jurisdictional facts on which it was based have ceased to exist." *Id.* (internal quotation marks omitted).

---

erred when it denied mother's motion as untimely. We emphasize, however, that that conclusion should not be read to suggest that the court erred when it held the permanency hearing as scheduled. That is, the court was not required to postpone the permanency hearing merely because defendant filed a motion to dismiss shortly before the day set for that hearing. To the contrary, in such a circumstance, a juvenile court may simply proceed with the scheduled permanency hearing and then address the dismissal motion *after* holding the permanency hearing. A juvenile court has the authority to postpone a hearing on a motion to dismiss or to allow parties additional time to adequately prepare their opposition to a motion. *Cf. Dept. of Human Services v. E. M.*, 268 Or App 332, 337-38, 341 P3d 216 (2014) (noting juvenile court's authority to grant continuance and citing ORS 419B.800(3) ("ORS 419B.800 to 419B.929 [governing procedure and practice in all juvenile court proceedings under ORS chapter 419B] do not preclude a court in which they apply from regulating pleading, practice and procedure in any manner not inconsistent with ORS 419B.800 to 419B.929.")).

In any event, the party who will bear the burden of proof on a motion to dismiss jurisdiction is determined by the permanency plan in effect at the time *a party moves* to dismiss jurisdiction; it is not determined by the plan in effect at the time *a court rules* on that motion. *Compare Dept. of Human Services v. T. D. G.*, 301 Or App 465, 473, 455 P3d 591 (2019) ("[If] a parent moves to dismiss jurisdiction while a child's permanency plan is reunification, the burden of proof is on DHS[.]"), *with T. L.*, 279 Or App at 690 ("[We require] a parent to bear the burden of proof on a motion to dismiss jurisdiction filed after a permanency plan has been changed away from return to parent[.]"). Thus, because mother moved to dismiss jurisdiction when the permanency plan was still reunification, the sequence in which the juvenile court denied mother's motion to dismiss and changed the permanency plan did not shift DHS's burden onto mother in this case.

Where, as here, "a parent moves to dismiss juris-diction while a child's permanency plan is reunification, the burden of proof is on DHS," to "show, by a preponderance of the evidence, that the factual bases for jurisdiction persist." *Id*. In making that showing, "[t]he evidence is limited to whether the conditions that were originally found to endan-ger a child persist." *Dept. of Human Services v. A. R. S.*, 258 Or App 624, 634, 310 P3d 1186 (2013), *rev dismissed*, 355 Or 668 (2014). Thus, "[a] juvenile court may not continue [juris-diction] over a child or change the permanency plan for the child from reunification to adoption based on" "extrinsic facts"—*i.e.*, "conditions or circumstances that are not explic-itly stated or fairly implied by the jurisdictional judgment." *Dept. of Human Services v. A. R. S.*, 256 Or App 653, 660, 303 P3d 963, *rev den*, 354 Or 386 (2013).

Here, in denying mother's motion to dismiss, the juvenile court focused, in large part, on mother's age, "health issues," and "extensive medical history," and how those issues might bear on her ability to care for her chil-dren. But nothing in the original jurisdictional judgment explicitly referred to those issues; therefore, mother's age, health, and medical history can justify continuing jurisdic-tion over the children only if those issues are "fairly implied" by the original bases for jurisdiction.

"Facts are not 'fairly implied' by a jurisdictional judgment, and thus are 'extrinsic' to the jurisdictional judg-ment, if a reasonable parent would not have known from the jurisdictional judgment that he or she needed to address the condition or circumstance exemplified by those facts." *T. L.*, 287 Or App at 763. To determine whether facts are "fairly implied," we "examine the bases for a juvenile court's deci-sion and the jurisdictional judgment and determine whether the judgment would put a reasonable parent on notice that those bases would be used to continue jurisdiction over a child." *T. W. v. C. L. K.*, 310 Or App 80, 91, 483 P3d 1237, *rev den*, 368 Or 515 (2021). We explained that inquiry by way of an example in *Dept. of Human Services v. G. E.*, 243 Or App 471, 481, 260 P3d 516, *adh'd to as modified on recons*, 246 Or App 136, 265 P3d 53 (2011):

"[F]or example, if the petition alleges that the child's cir-cumstances endanger her welfare because the child is

living in a home where a fellow occupant pointed a loaded gun at her, a reasonable parent would know that the state can [continue] jurisdiction if it proves by a preponderance of the evidence that the child is living in a different home where a different occupant exposes her to dangerous weapons or inherently dangerous substances."

In short, if a fact cannot be fairly implied by the original jurisdictional bases, the juvenile court errs if it relies on that fact to continue dependency jurisdiction. *See G. E.*, 243 Or App at 479 (It is "axiomatic that a juvenile court may not continue a wardship based on facts that have never been alleged in a jurisdictional petition.").

With that framework in mind, we conclude that the juvenile court in this case erred by relying, at least in part, on facts extrinsic to the jurisdictional judgment when it denied mother's motion to dismiss jurisdiction. Again, the original bases for jurisdiction set forth in the jurisdictional judgment provided:

- "The mother has not parented the children for over four (4) years, during this time but without a legal custody agreement the children were in the care of relatives who used excessive physical discipline and unsafe parenting practices."

- "Over the last year, the mother did not visit in person while the children were residing in an unsafe situation and were placed at risk of harm."

- "Additionally, the children do not currently want to return to the care of their mother and the family needs services to repair their relationship."

Those allegations are sufficient to put mother on notice that she needs to parent the children and protect them from the Burkharts or other persons whose care involves excessive discipline or unsafe parenting practices; that she must spend more time with the children—through in-person visits or otherwise—under circumstances that are safe for the children; and that she must work, perhaps through DHS-facilitated services, to repair her relationship with the children so that the children feel safe returning to her care.

In denying mother's motion to dismiss, however, the juvenile court relied, at least in part, on facts concerning

mother's age, health, and medical history, as it pointed to the following:

- "Eighty-four or 85-year-old Mother has an extensive medical history ***."

- "[H]ealth issues in part caused Mother to place the children with the relatives ***."

- "Mother does not seem to recognize that her health issues pose a threat to those who might be in her care."

- "[P]eople around Mother recognize and are concerned about Mother's health and her ability to care for children."

- "If Mother cannot manage her children again *** because Mother's health issues make it impossible ***."

Those concerns about mother's age, health, and medical history affecting her caregiving abilities were not fairly implied by the jurisdictional judgment. Put differently, we cannot conclude that mother was provided adequate notice that those identified concerns could be used to continue the juvenile court's jurisdiction over the children. Thus, the juvenile court erred by relying, at least in part, on facts extrinsic to the jurisdictional bases in its ruling to continue jurisdiction and change the permanency plan, and we cannot discern from the record whether the court would have reached the same decision without those facts.[4]

As we have previously said, "If a juvenile court erroneously relied on facts extrinsic to the jurisdictional bases to continue jurisdiction, the remedy is for the judgment to be reversed and remanded so the juvenile court can reconsider the motion to dismiss without reliance on those extrinsic facts." *C. L. K.*, 310 Or App at 93; *see also Dept. of Human*

---

[4] Although "a juvenile court may not continue a wardship based on facts that have never been alleged in a jurisdictional petition," *G. E.*, 243 Or App at 479, "the Oregon Supreme Court [has] noted the possibility of asserting a new jurisdictional basis within the procedural confines of ORS 419B.809(6), which provides that '[t]he court on motion of an interested party or on its own motion, may at any time direct that the petition be amended,'" *C. L. K.*, 310 Or App at 89 (citing *Dept. of Human Services v. J. C.*, 365 Or 223, 235, 444 P3d 1098 (2019)). We express no opinion as to whether, in this case, concerns about mother's age and health could form the basis for continuing the juvenile court's jurisdiction over the children were the jurisdictional petition to be amended.

*Services v. J. R. L.*, 256 Or App 437, 452, 300 P3d 291 (2013) (reversing and remanding "for the court to reconsider mother's motion [to dismiss jurisdiction]," because "the court based its decision to continue jurisdiction, in large part, on mother's mental health, a fact extrinsic to the jurisdictional judgment"); *G. E.*, 243 Or App at 479 (reversing and remanding where juvenile court, in denying the mother's motion to dismiss, "may have based its decision on some facts that are extrinsic to the jurisdictional judgment"). For that reason, we reverse and remand for the court to reconsider mother's motion without reliance on those extrinsic facts.

We likewise understand that the juvenile court's permanency determination was based, at least in part, on those same extrinsic facts about mother's age and health; therefore, we also reverse and remand the permanency judgment on that basis. *See Dept. of Human Services v. K. S. S.*, 310 Or App 498, 507, 485 P3d 924 (2021) (reversing and remanding where juvenile court's determination changing permanency plan relied, "at least in part," on "a fact extrinsic to the jurisdictional judgment"); *Dept. of Human Services v. N. M. S.*, 246 Or App 284, 287, 266 P3d 107 (2011) (reversing and remanding where court's decision to change permanency plan "appears to have relied, at least in part, on facts not fairly encompassed within the grounds for jurisdiction").

Reversed and remanded.