Argued and submitted July 22, 2020, reversed and remanded April 7, 2021

In the Matter of O. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. S. S.,
*Appellant.*

Douglas County Circuit Court
18JU05091;
Petition Number 00488418;
A173475

485 P3d 924

Father appeals from a judgment changing the permanency plan for his daughter from reunification to adoption. He argues that the juvenile court erred in concluding that father had not made sufficient progress towards reunification and that, in making that determination, the court relied on an extrinsic fact—father's failure to complete sex offender treatment—that was not fairly implied by the adjudicated basis for dependency jurisdiction. *Held*: The Court of Appeals concluded that neither the petition nor the jurisdictional judgment and its attachments provided father with adequate notice that he had to complete sex offender treatment for purposes of his dependency case.

Reversed and remanded.

William A. Marshall, Judge.

Shannon Flowers, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

Reversed and remanded.

**POWERS, J.**

In this juvenile dependency case, father appeals from a judgment changing the permanency plan for his daughter, O, from reunification to adoption. Father argues that the juvenile court erred in concluding that father had not made sufficient progress towards reunification and that, in making that determination, the court relied on extrinsic facts that were "not fairly implied by the adjudicated basis for dependency jurisdiction." We conclude that the court erred in relying on facts outside the scope of the jurisdictional judgment, and we reverse and remand on that basis.

Father does not request that we exercise our discretion to conduct *de novo* review, and we see no reason to do so. *See* ORAP 5.40(8)(c). Thus, "we review the juvenile court's legal conclusions for legal error, and we are bound by the court's findings of historical fact as long as there is any evidence to support them." *Dept. of Human Services v. N. T.*, 247 Or App 706, 709, 271 P3d 143 (2012). We state the facts consistently with that standard.

In 2015, father began dating mother, who is not a party to this appeal. In 2017, O was born when father was 22 and mother was 16. Subsequently, father pleaded guilty to third-degree rape and was sentenced to five years of probation. Despite the existence of a no-contact order, father and mother continued to live together until 2018 when they had a domestic dispute that led to the involvement of the Department of Human Services (DHS). Father's sister called police after father grabbed mother by the throat and pushed her down onto a bed while she was holding O. After his sister called the police, father left the apartment with a firearm intending to kill himself. Father later changed his mind and eventually returned to the apartment. He was subsequently arrested for violating the no-contact order, disorderly conduct, harassment, and menacing constituting domestic violence.

DHS took protective custody of O and eventually placed her in the care of father's sister. Around that time, father began participating in weekly mental health counseling to address his "daily irritability, anger outbursts, poor self-esteem, and hopelessness." Additionally, father

underwent a psychological evaluation and was diagnosed with an unspecified intellectual disability, persistent depressive disorder, and a specific learning disorder with impairments in mathematics.

In June 2018, DHS filed a petition for jurisdiction over O. As to father, the original petition alleged that (1) father had subjected mother to domestic violence and presented a threat of harm to the child; that (2) father's chaotic lifestyle and residential instability interfered with his ability to safely parent the child; and, that (3) father's erratic, volatile, and threatening behaviors represented a threat of harm to the child. DHS later amended the third allegation such that it provided that father's "mental health issues interfere with his ability to safely parent the child." Father admitted to the amended third allegation, and the juvenile court entered a judgment establishing jurisdiction over O solely based on father's mental health issues and dismissed the other two allegations. Attached to the jurisdictional judgment was father's case plan, which referenced father's psychological evaluation, as well as father's suicidal ideations. The case plan also referenced father's pending criminal charges.

Over the following year, father and mother separated, and she moved out of state. Father continued to participate in bi-weekly counseling sessions, completed parenting classes, and consistently attended weekly supervised visits with O. Father came to his supervised visits prepared with snacks and toys for O and was "fairly attentive and engaged during visitation." A DHS caseworker noted in her report to the court that father "appeare[d] able to meet most [of O's] basic needs," but occasionally required "some prompts and support about when and how to consistently attend to basic needs and what is and isn't age appropriate for [O]."

As part of father's criminal case in which he pleaded guilty to third-degree rape, father was required to complete sex offender treatment. He was also prohibited from having any contact with minors, with the exception of supervised visits with O. Father, however, violated the terms of his probation when he was discharged from his sex offender program for not being honest and when he entered into a new

romantic relationship without discussing it with his probation officer. After he failed two polygraph exams, father's probation was revoked.

In January 2020, DHS sought to change the permanency plan from reunification to adoption. A DHS caseworker reported that father "ha[d] not been able to move towards conditions for return," and that father continued to "struggle in his services, especially around being 'transparent' with providers." At the permanency hearing, the caseworker testified that father's counselor reported that he had difficulty "being upfront and honest about what's going on in his life." When the caseworker was asked whether she had observed any progress in father's mental health issues, she testified that she had seen some "maturity," but that her "concern continue[d] to be his inability to [be] honest." The caseworker also testified that father's sex offender treatment was "part of his mental health issues" and that completing treatment would help address father's mental health issues.

During closing arguments, DHS asserted that father had "made some progress but not nearly enough." Specifically, DHS argued that father's "cognitive issues continue[d] to be a barrier" and that his behaviors demonstrated "ongoing mental health deficits." DHS further contended that father continued to have issues with honesty, which it argued constituted "a mental health issue." Both child's attorney and the court-appointed special advocate also argued that changing the permanency plan to adoption was in O's best interests and testified to O's attachment to her foster parents.

In response, father argued that the only jurisdictional basis—mental health—had "been ameliorated" and that the sex offender treatment requirement was not a basis for jurisdiction.[1] Asserting that DHS and child's attorney were "trying to inflate" the sole basis for jurisdiction to something more, father argued:

---

[1] Although father argued that the mental health issues had "actually been ameliorated," father acknowledged when pressed by the juvenile court that he had not filed a motion to dismiss that allegation. We understand his argument to the juvenile court to be a reason why the permanency plan should not be changed rather than for dismissal of the dependency petition.

> "[T]he mental health situation \* \* \* at the outset of this case, was that [father] was depressed. He had a couple of suicidal episodes. He had a volatile relationship with the mother. He was a pretty immature young man then.
>
> "And he was dealing with anxiety. He was dealing with the stress. They had a physical encounter that the child was in the middle of. And the basis for jurisdiction was his mental health based on those things.
>
> "It wasn't based on him being in sex offender treatment. That criminal case hadn't been resolved then, when that jurisdictional basis was established in the juvenile case. Trying to add it to the jurisdictional basis later, I would argue, isn't proper, isn't legal. It's not a fact.
>
> "[He] has not been suffering from depression. He has not been suffering from anxiety. He has made great progress with his therapist throughout this."

Given his progress working on his mental health issues, father asserted that there was no reason why he could not parent his child safely within a reasonable time.

The juvenile court disagreed, concluding that DHS had made reasonable efforts towards reunification, and that, despite those efforts, father had made insufficient progress to make it possible for O to be returned to his care. In ruling from the bench, the court concluded that father's sex offender treatment was related to his mental health. The court also explained how father's dishonesty related to his mental health treatment:

> "Understanding what a therapist is asking you and treatment providers are asking of you is essential to cure a person's mental health issues. Honesty is essential because honesty is part of a mental health therapist's ability to get to the bottom of somebody's issues because a therapist can't crack open a person's head and look inside and see what's making that person tick. They have to rely on honesty."

Ultimately, the juvenile court changed O's permanency plan from reunification to adoption.

On appeal, father argues that the evidence presented by DHS failed to establish that "father's progress in ameliorating his 'mental health issues' was insufficient for purposes of ORS 419B.476(2)(a) because it d[id] not establish

that, at the time of the permanency [hearing], father's mental health would prevent him from providing minimally adequate parenting for [O]."[2] (Emphasis omitted.) Father further argues that the juvenile court erred by relying on evidence that father had not completed his sex offender treatment to conclude that father had made insufficient progress toward ameliorating his mental health issues. Specifically, father asserts that the caseworker's belief that sex offender treatment was related to his mental health was "immaterial," because "a reasonable parent in father's position would not have known from the jurisdictional judgment that he or she needed to complete sex offender treatment." (Emphasis omitted.) Furthermore, if the juvenile court believed that father's status posed a risk to O, father contends that it should have "provid[ed] father with constitutionally adequate notice by ordering the department to file a new petition with such allegations," allowing father a reasonable opportunity to ameliorate that jurisdictional basis.

In response, DHS argues that the juvenile court correctly considered father's failure to complete sex offender treatment given the caseworker's testimony that it related to father's mental health and because father's probation precluded him from having unsupervised contact with O, and thus, O could not safely be returned to father's care as prescribed by ORS 419B.476(2)(a).[3] In acknowledging that "the

---

[2] ORS 419B.476 provides, in part:

"(2)  At a permanency hearing the court shall:

"(a)  If the case plan at the time of the hearing is to reunify the family, determine whether the Department of Human Services has made reasonable efforts or, if there is reason to know as described in section 15 of this 2020 special session Act that the ward is an Indian child, active efforts as described in section 18 of this 2020 special session Act to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home. In making its determination, the court shall consider the ward's health and safety the paramount concerns."

Although amendments to ORS 419B.476 went into effect during the pendency of this appeal, Or Laws 2020, ch 14, § 38 (Spec Sess), none of those changes affect our analysis. Accordingly, we refer to the current version of the statute in this opinion.

[3] DHS also asserts that, to the extent father argues that he made sufficient progress to make it possible for O to safely return home at the time of the hearing, father's argument is unpreserved. In his reply brief, father disclaims any such argument and reiterates that his argument is focused on asserting that the

jurisdictional judgment predated father's conviction and did not refer to father's sex offense," DHS argues that father was nonetheless on notice that he needed to complete sex offender treatment. Highlighting several documents in support of its argument that father had notice, DHS argues that father "would not have been surprised" that he needed to complete sex offender treatment for O to be returned to his care: (1) father's case plan attached to the jurisdictional judgment, which stated that father had "pending criminal charges for Rape III with [mother] being the victim," (2) father's psychological evaluation, (3) father's individual treatment notes, and (4) father's action agreements, which required father to comply with all of the terms of his probation.

To change a permanency plan from reunification to adoption, "the proponent of the change must prove that, despite DHS's reasonable efforts to reunify the parent with his or her child, the parent has not made sufficient progress for the ward to safely return home." *Dept. of Human Services v. C. E.*, 288 Or App 649, 656, 406 P3d 211 (2017) (internal quotation marks omitted); ORS 419B.476(2)(a). In making those determinations, however, a juvenile court may not "change the permanency plan for the child from reunification to adoption based on conditions or circumstances that are not explicitly stated or fairly implied by the jurisdictional judgment." *Dept. of Human Services v. A. R. S.*, 256 Or App 653, 660, 303 P3d 963, *rev den*, 354 Or 386 (2013). As we explained in *N. T.*, the specific "issues of parental unfitness established in the jurisdictional judgment provide the framework for the court's analysis of each question—that is, both DHS's efforts and a parent's progress are evaluated by reference to the facts that formed the bases for juvenile court jurisdiction." 247 Or App at 715. The jurisdictional judgment serves to provide a parent with constitutionally adequate notice. *See Dept. of Human Services v. N. M. S.*, 246 Or App 284, 300, 266 P3d 107 (2011) ("[A] petition or jurisdictional judgment must provide a parent with reasonable notice of the deficiencies that he or she must address

---

juvenile court incorrectly relied on facts outside of the only adjudicated basis for jurisdiction to determine that his progress was insufficient and supported the change of O's permanency plan. Accordingly, we reject DHS's preservation argument without further discussion.

in order to prevent continued jurisdiction; if it does not, it affects a 'substantial right' of the parent—*viz.*, the right to constitutionally adequate notice[.]"). Therefore, a juvenile court's reliance on extrinsic facts "affect a parent's right to both notice of what conditions or circumstances the parent must remediate and a reasonable opportunity—through access to services—to remediate them." *N. T.*, 247 Or App at 715.

Facts are not fairly implied by the jurisdictional judgment, and thus are "extrinsic" to the judgment, "if a reasonable parent would not have known from the jurisdictional judgment that he or she needed to address the condition or circumstance exemplified by those facts." *Dept. of Human Services v. T. L.*, 287 Or App 753, 763, 403 P3d 488 (2017). When evaluating whether a parent was on notice that his, her, or their progress would be assessed based upon particular facts, "we look to the petition, the jurisdictional judgment, and documentation attached to the jurisdictional judgment providing the parent notice as to the conditions for reunification." *C. E.*, 288 Or App at 657.

We conclude that neither the petition nor the jurisdictional judgment and its attachments provided father with adequate notice that he had to complete sex offender treatment for purposes of the dependency case. Here, the jurisdictional judgment identified a single barrier to reunification, *viz.*, father's mental health issues. DHS does not argue that sex offender treatment was a condition explicitly stated in the court's jurisdictional judgment; rather, DHS contends that father had notice that he had to complete sex offender treatment before O could be returned to his care. The question therefore reduces to whether the jurisdictional judgment and its attachments fairly implied that completing sex offender treatment was a condition or circumstance that father had to address.

DHS relies on several documents to establish that father had notice: father's case plan, father's psychological evaluation, father's individual treatment records, and father's action agreements. Although the case plan attached to the jurisdictional judgment did note that father had "pending criminal charges for Rape III with [mother] being

the victim," that fact standing alone does not inform father of any conditions that he was required to meet for purposes of the dependency proceeding. Read in context, the reference to father's criminal charges provided the background for the case plan's discussion of "father's erratic, volatile, and threatening behavior represent[ing] a threat of harm to the child." That allegation was based on the domestic violence incident between father and mother, as well as father's suicide attempts and subsequent hospitalization. More to the point, completing sex offender treatment was not specifically prescribed in the case plan, nor can it be fairly implied given the circumstances of this case.[4]

Father's action agreements requiring him to comply with the terms of his probation also did not provide father with adequate notice in this dependency case. Unlike the situation in *Dept. of Human Services v. M. M. B.*, 253 Or App 431, 440, 290 P3d 891 (2012), *rev den*, 353 Or 280 (2013), where the action agreement was attached to the jurisdictional judgment, the action agreements in this case were not a part of the jurisdictional judgment and therefore any requirement to comply with probation has to be fairly implied by the single basis for jurisdiction. Because we look to the petition, the jurisdictional judgment, and documentation attached to the jurisdictional judgment to evaluate whether a parent had sufficient notice of their conditions for reunification, we cannot conclude that father received constitutionally adequate notice from his action agreements to address his sex offender status. *See N. M. S.*, 246 Or App at 300 ("[I]f the parental condition or characteristic is not one that fairly can be implied from the facts found in the jurisdictional judgment, then it is outside the scope of the court's jurisdiction, and that deficit cannot be remedied by claims of 'actual notice' through case plans or *** letters of expectation." (Emphasis omitted.)); *see also Dept. of Human Services v. J. R. L.*, 256 Or App 437, 449-50, 300 P3d 291

---

[4] The case plan also referred to father's psychological evaluation, which DHS similarly argues, put father on notice that his sex offender treatment was related to his mental health. We reject that argument on the same ground as father's case plan: The psychological evaluation noted father's criminal charges but did not specifically tie those charges in any meaningful way to father's mental health issues. Similarly, we reject DHS's reliance on father's individual treatment records.

(2013) (rejecting DHS's argument that "subsequent reports to the court" indicating that the mother needed to address her depression and anxiety issues constituted sufficient notice, because "only the petition or the jurisdictional judgment [and attached documentation] can provide a parent with adequate notice" (internal quotation marks omitted)).

To be sure, father was aware that he had to complete sex offender treatment as a condition of his probation for his criminal case. We cannot, however, impute that knowledge to father's dependency case when nothing in the jurisdictional judgment and supporting documents alerted father that he needed to complete sex offender treatment to cure the condition or circumstance that formed the basis for the court's jurisdiction over child. From our review of the record, the catalyst for father's mental health issues that formed the jurisdictional basis stemmed primarily from father's suicidal episodes, not father's probation requirements.

In this case, there is no dispute that the juvenile court relied on father's sex offender treatment, at least in part, in determining that father had not made sufficient progress towards reunification. Thus, because we conclude that father did not receive adequate notice of the condition to complete sex offender treatment, we necessarily hold that the juvenile court erred in relying on a fact extrinsic to the jurisdictional judgment when it concluded that DHS carried its burden to change O's permanency plan.[5]

Finally, we reject DHS's argument that the juvenile court did not err in considering father's sex offender treatment, because, given father's probation restrictions, O "could not safely be returned to his home." We have previously "rejected the notion that a juvenile court can change a permanency plan based on parental deficiencies that are not expressly stated in or fairly implied by the jurisdictional judgment, even if those deficiencies endanger a child." *T. L.*, 287 Or App at 766-67. Instead, where "a juvenile court has

---

[5] Given our conclusion, we need not address father's argument that he had ameliorated his mental health condition. Further, the parties on remand will have the opportunity to address whether father's purported dishonesty with his counselor relates to any adjudicated basis for jurisdiction, and what nexus, if any, that dishonesty has to father's progress.

concerns about an unadjudicated condition or circumstance, the court, on the motion of an interested party or on its own motion, can direct that the petition be amended, and, thereby, set in motion the proper procedures for addressing any possible endangerment." *Id.* at 767.

Reversed and remanded.