Argued and submitted October 13, 2021, affirmed June 29, 2022

In the Matter of L. W. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. H.
and J. A. H. Sr.,
*Appellants.*

Josephine County Circuit Court
18JU04203; A175426 (Control)

In the Matter of C. M. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. H.
and J. A. H. Sr.,
*Appellants.*

Josephine County Circuit Court
18JU04204; A175427

In the Matter of M. R. D. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

M. R. D. H.,
*Respondent,*

*v.*

A. H.
and J. A. H. Sr.,
*Appellants.*

Josephine County Circuit Court
18JU04205; A175428

514 P3d 121

In this consolidated juvenile dependency case, mother and father appeal from a judgment denying mother's motions to dismiss jurisdiction and terminate the court's wardships over their three children. In her motion, mother argued that there was insufficient evidence to establish that the welfare of her children was endangered while they were in her care. The trial court disagreed, concluding that the original bases for jurisdiction continued to pose a threat of serious loss or injury to the children. On appeal, mother renews her arguments from below. Specifically, she asserts that the trial court erred when it based its decision on evidence that was extrinsic to the adjudicated jurisdictional bases. She also argues that the original jurisdictional bases did not provide her with constitutionally adequate notice that she must overcome a codependent relationship with father or otherwise learn to protect her children from father. *Held*: The Court of Appeals concluded that the jurisdictional bases are about the abuse and neglect of mother's children, whatever the underlying cause or whoever the primary abuser. Mother was given notice that she needed to ameliorate the concerns involved with the neglect and abuse of her children. The record supports that mother failed to do so.

Affirmed.

Sarah E. McGlaughlin, Judge.

Kristen G. Williams argued the cause and filed the briefs for appellant A. H.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sarah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant J. A. H., Sr.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent Department of Human Services. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Christa Obold Eshleman argued the cause for respondent M. R. D. H. Also on the brief was Youth, Rights & Justice.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Affirmed.

## ORTEGA, P. J.

In this consolidated juvenile dependency case, mother and father appeal from a judgment denying mother's motions to dismiss jurisdiction and terminate the court's wardships over their three children, C, L, and M. Father did not separately file motions to dismiss and instead supported mother's motions, arguing that the bases for jurisdiction were ameliorated by mother.[1] For the reasons set forth below, we affirm the juvenile court's denials of mother's motions to dismiss.

We review the juvenile court's denials of mother's motions to dismiss for errors of law. *Dept. of Human Services v. G. E.*, 243 Or App 471, 478, 260 P3d 516, *adh'd to as modified on recons*, 246 Or App 136, 265 P3d 53 (2011). However, "[w]e are bound by the juvenile court's findings of historical fact as long as there is any evidence to support them." *Id.* We have previously set out the historical facts relative to these children and do not repeat them here. *See Dept. of Human Services v. A. H.*, 317 Or App 697, 699-703, 505 P3d 1064 (2022). For purposes of this appeal, we need only focus on the juvenile court's bases for jurisdiction of the children and its decision on mother's motions to dismiss.

The juvenile court took jurisdiction over C, L, and M in September 2018 after concluding that the Department of Human Services (DHS) proved the following bases in the amended petition for each child:[2]

"a)  That on or about but not limited to 05/14/2018, in Josephine County, said child's mother failed to provide for the child's sibling's basic daily needs of: education, medical care, and nutritional requirements.

"b)  Further, the child's sibling suffered malnutrition while in the care of the mother.

---

[1] After the court denied mother's motions to dismiss, the court changed the children's plans from reunification to guardianship for C and L, and to adoption for M. Mother separately appealed those decisions, and we affirmed. *See Dept. of Human Services v. A. H.*, 320 Or App 65, 511 P3d 1133 (2022); *Dept. of Human Services v. A. H.*, 317 Or App 697, 505 P3d 1064 (2022).

[2] The petition concerning L used different letters for some of the paragraphs, but the substance of the proven allegations was exactly the same as for the other two children.

"c)   Further the child's sibling suffered malnutrition while in the care of the father.

"d)   Further, the father failed to provide for the child's sibling's basic daily needs of: education, medical care, and nutritional requirements.

"* * * * *

"f)   The mother has another child for whom she is not a parental resource and the conditions or circumstances that were the basis for the mother not having custody of that child, which include abuse and neglect, have not changed or been ameliorated and interfere with her ability to safely parent the child.

"* * * * *

"h)   While in the custody of mother the child's sibling suffered a non-accidental injury that is at variance with the explanation given by the mother.

"i)   The mother's parental rights previously have been terminated to a child in Hawaii and the conditions and circumstances giving rise to the prior termination, which include physical abuse and neglect have not changed or been ameliorated.

"* * * * *

"l)   While in the custody of the father the child's sibling suffered a non-accidental injury that is at variance with the explanation given by the father."

The court determined that L was within its jurisdiction on two additional bases: "the mother is unable and/or unwilling to provide for the educational needs for the child" and "the father is unable and/or unwilling to provide for the educational needs for the child."

In a form attached to the jurisdictional judgment, the court also ordered parents to complete a psychological evaluation and any recommended services, a mental health evaluation and any recommended services, a parenting program and any recommended services, and in-home safety and reunification services and any recommended services.

About two years after entry of that judgment, mother moved to dismiss dependency jurisdiction over C,

L, and M. She argued "that there is insufficient competent evidence to establish that [her children's] welfare is endangered while in her care." The court held a hearing on mother's motions and concluded that the "original bases for jurisdiction continues to pose a threat of serious loss or injury to the children which is reasonably likely to be realized should the children be returned to their mother's care." The court stated:

> "In short, over a period of years, the parents have exhibited a pattern of abuse and neglect with each of the eldest children. Despite that, mother is unable or unwilling to identify the behavior or circumstances that have led to the abuse and neglect of two of her five children, including the non-accidental injury of one of the children while in her care and the persistence of conditions and circumstances of physical abuse and neglect that led to her first child's removal.

> "Mother does not necessarily need to acknowledge past abuse to prevent future abuse. If she were truly separated from father (the suspected abuser), that would neutralize the threat of harm. She may also undergo extensive counseling to address the codependency that apparently blinds her to the abusive and neglectful conduct inflicted on the two eldest children. Because mother has not done either, there is a current threat of serious loss or injury to the three children if they were returned to her care."

The court went on to conclude:

> "In summary, based on the testimony of the psychologists and the quality of mother's testimony, the court finds it extraordinarily unlikely that mother truly intends to separate or even attempt to independently parent her children. It is apparent to the court that mother does not understand how father presented a safety threat to the children before, or how he would do so again. Despite one of the jurisdictional bas[e]s being that [children's sibling, J,] suffered a non-accidental injury in mother's care, and another basis being the persistence of conditions and circumstances of physical abuse and neglect that led to her first child's removal, mother has not shown any awareness as to how her or father's behavior endangered her children. Mother does not necessarily have to take full accountability for the abuse and neglect of her elder two children, nor does

she have to separate from her husband in order to show that the safety threat has been ameliorated. However, she has not undergone the type of counseling that would allow her to achieve the independence and clarity necessary to protect her children. For these reasons, mother's motions to dismiss are denied."

On appeal, mother asserts that the evidence submitted by DHS was insufficient to support continuing dependency jurisdiction based on the alleged and proven allegations. Mother contends that the court erred because it based its decision on evidence that was extrinsic to the adjudicated jurisdictional bases. In mother's view, the "bases for juvenile court jurisdiction do not include mother's codependency or any mental health conditions as posing a risk of serious harm to L, C or M." Rather, mother contends that the bases for jurisdiction were about mother's own conduct and not a failure to protect the children from father. Moreover, mother contends that the original jurisdictional bases did not provide her with constitutionally adequate notice that she must overcome a codependent relationship with father or otherwise learn to protect C, L, and M from father. Father also argues that the juvenile court erred in denying mother's motions to dismiss dependency jurisdiction by relying on facts extrinsic to the adjudicated jurisdictional bases and that mother lacked adequate notice of a different basis for jurisdiction.

DHS responds that the juvenile court properly denied mother's motions to dismiss. DHS asserts that parents "view the jurisdictional grounds too narrowly[.]" Rather, in DHS's view, the jurisdictional grounds fairly implied a pattern of abuse perpetrated while children were in mother's care. DHS asserts that the evidence established that mother had not ameliorated the conditions leading to that pattern of abuse and that mother had sufficient notice about those conditions.

M, the only child who appears in this appeal, contends that mother was given reasonable notice that she needed to correct the underlying conditions and characteristics that caused her children to be abused and neglected in her home. According to M, that notice came from the allegations as well as the orders in the jurisdictional judgment

that mother must, among other things, complete a psychological evaluation and follow any recommended treatment, and complete a parenting program and follow any recommendations. M points to the fact that, despite the services offered, mother still denied any abuse had ever occurred, remained married to father (who had undisputedly made insufficient progress), and likely would coparent with him if the children were returned. In M's view, those facts are not extrinsic to the jurisdictional judgment because they are underlying causes of the proven abuse and neglect in mother's care. M asserts that the juvenile court must consider the jurisdictional bases in their totality and that, even if there was no evidence that mother, if acting alone, would perpetrate further abuse or neglect, the juvenile court permissibly found that mother's claim that she would parent independently from father was not credible. M argues that, because mother's parenting was still intertwined with father, who undisputedly presented the greater danger, mother had not ameliorated the threat of harm stemming from all the jurisdictional bases.

We begin our analysis with a brief discussion of the statutory provisions governing jurisdiction and wardship to provide context. The juvenile court has jurisdiction over a child who is under 18 years old and "[w]hose condition or circumstances are such as to endanger the welfare of the person or of others[.]" ORS 419B.100(1)(c). "A child's welfare is 'endangered' *** if the child is exposed to a 'current threat of serious loss or injury' and that threat is 'reasonably likely to be realized.'" *T. W. v. C. L. K.*, 310 Or App 80, 88, 483 P3d 1237, *rev den*, 368 Or 515 (2021) (quoting *Dept. of Human Services v. G. J. R.*, 254 Or App 436, 443, 295 P3d 672 (2013)). In a petition alleging jurisdiction, DHS "must set forth in ordinary and concise language *** the facts that bring the child within the jurisdiction of the court, *including sufficient information to put the parties on notice of the issues in the proceeding.*" ORS 419B.809(4)(b) (emphasis added).

A juvenile court may not continue a wardship if the jurisdictional facts on which it is based have ceased to exist. *State v. A. L. M.*, 232 Or App 13, 16, 220 P3d 449 (2009). A juvenile court also may not continue a wardship based on facts that were not alleged in a jurisdictional petition. ORS

419B.809(4)(b). Only "the petition or the jurisdictional judgment" can provide a parent with adequate notice. *G. E.*, 243 Or App at 481. As a result, a juvenile court cannot base a jurisdictional decision on facts that depart from the petition or jurisdictional judgment when neither the petition nor the jurisdictional judgment would put a reasonable parent on notice of what the parent must do to prevent the state from asserting or continuing jurisdiction over the child. *Id.*; *see also Dept. of Human Services v. N. T.*, 247 Or App 706, 717-18, 271 P3d 143 (2012) (reversing judgments changing permanency plans that were based, in part, on facts related to the father's conduct not explicitly stated in or fairly implied by the jurisdictional judgment). Whether a particular fact is extrinsic to the jurisdictional bases is determined by "whether [the] parents received adequate notice" of what would allow the state to continue to assert jurisdiction. *C. L. K.*, 310 Or App at 91. "In determining whether a parent was on notice that his or her progress would be assessed based upon particular facts, we look to the petition, the jurisdictional judgment, and documentation attached to the jurisdictional judgment providing the parent notice as to the conditions for reunification." *Dept. of Human Services v. C. E.*, 288 Or App 649, 656-57, 406 P3d 211 (2017).

Here, DHS proved that the grounds for jurisdiction persisted and that the current risk was based on parents' history and pattern of physically abusing at least two children without taking sufficient steps to end that pattern of behavior. Mother was provided adequate notice that she needed to ameliorate the underlying conditions and characteristics that led to the abuse and neglect in her home. That notice came from the allegations as well as the orders in the jurisdictional judgment that mother must, among other things, complete a psychological evaluation and follow any recommended treatment, and complete a parenting program and follow any recommendations. Jurisdiction was based on severe abuse and neglect of the basic needs of the two other siblings of the children while in mother's and father's care. The court opined that, for mother to ameliorate the underlying conditions and characteristics that led to the abuse and neglect, she "does not necessarily have to take full accountability for the abuse and neglect of her elder two

children, nor does she have to separate from her husband in order to show that the safety threat has been ameliorated." The court, however, explained that mother has not "undergone the type of counseling that would allow her to achieve the independence and clarity necessary to protect her children." In fact, mother's own testimony at the hearing did not exhibit "any awareness as to how her or father's behavior endangered her children."

The record supports the court's findings. Mother made no apparent progress towards ameliorating the underlying causes of neglect and abuse of her children. Not only did mother refuse to acknowledge her role in the removal of her children, but she also declined services offered to her, exhibited a pattern of not being forthcoming and denying the abuse of her two oldest sons, scapegoating one of her sons, and not meaningfully engaging in the services she did participate in.

Mother's argument on appeal does not take account of the totality of the circumstances here and narrowly focuses on the fact that she did not have specific notice to ameliorate her *codependency* to father. That argument ignores that the jurisdictional bases are about abuse and neglect of her children, whatever the underlying cause (or whoever the primary abuser). In fact, the court explicitly stated that mother did not necessarily have to separate from her husband to show that the safety threat had been ameliorated. The court's ruling was not based merely on her codependency issues with father; the court also found that mother did not make any progress in ameliorating the underlying causes of the abuse and neglect. Mother suggests that that conclusion could allow for "jurisdiction to continue if the underlying causes of the abuse and neglect were found to be a result of a parent's substance abuse[,]" for example, even if the allegations make no mention of substance abuse. We disagree. Mother was given notice that she needed to ameliorate the concerns involved with the neglect and abuse of her children. The court did not order a drug and alcohol assessment; it ordered that she engage and participate in a psychological evaluation and parenting program, and any of the recommended services. Thus, it is fairly implied

that codependency or a personality disorder were conditions mother would need to address with regard to her role in the abuse and neglect of her children.

Affirmed.