No. 377 April 30, 2025 179

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of N. S. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

H. K. R.
*Appellant.*

Baker County Circuit Court
22JU05568; A184897 (Control)

In the Matter of S. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

H. K. R.,
*Appellant.*

Baker County Circuit Court
22JU05569; A184898

Matthew B. Shirtcliff, Judge.

Submitted March 18, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Holly Telerant, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Father appeals from a permanency judgment in which the juvenile court changed the permanency plan from reunification to guardianship for his two youngest children.[1] We have previously dismissed as moot the appeal as to the two oldest children, M and H, and thus, we only address the appeal as to N and S. In his six remaining assignments of error, father argues that the juvenile court erred in concluding that the Department of Human Services (DHS) made reasonable efforts to reunify father with his children and that father's progress to ensure that it was safe for the children to return home was insufficient. Father also contends that the juvenile court relied on evidence of facts extrinsic to the adjudicated bases to reach its determination. As to the court's determination that father did not make sufficient progress, we agree with DHS that father did not preserve his argument on appeal.[2] *See Peeples v. Lampert*, 345 Or 209, 223, 191 P3d 637 (2008) ("A party that does not preserve an issue, when it is reasonably possible to do so, is not entitled to appellate review of it."). Further, father does not request *de novo* review on appeal, and we decline to exercise our discretion to review any error as plain. ORAP 5.45. Thus, we only address whether the court erred in determining that DHS made reasonable efforts, and whether the court relied on extrinsic facts. On both points, we see no legal error. Accordingly, we affirm.[3]

On appeal, we review for legal error the juvenile court's determination that DHS made reasonable efforts. *Dept. of Human Services v. A. H.*, 317 Or App 697, 699, 505 P3d 1064 (2022). We also review whether the court relied on facts extrinsic to the adjudicated bases for errors of law. *Dept.*

---

[1] Mother is not party to this appeal.

[2] In father's closing arguments, instead of asserting that father had made sufficient progress toward reunification, father asked the court to exercise its discretion to continue the plan of reunification because father was now willing to reengage in services and the children could return home within a reasonable time. That argument did not preserve the argument on appeal that the court erred in ruling that father had not made sufficient progress.

[3] Father appealed both the juvenile court's order denying his motion to dismiss jurisdiction and the permanency judgment that arose from the same hearing. The related case addressing the order is *Dept. of Human Services v. H. K. R.*, ___ Or App ___, ___ P3d ___ (Apr 30, 2025).

*of Human Services v. T. L.*, 287 Or App 753, 755, 403 P3d 488 (2017). Finally, we review the court's factual findings "to determine whether they are supported by any evidence and then to determine if, as a matter of law, those facts provide a basis for the juvenile court's change of the permanency plan from reunification to guardianship under ORS 419B.476." *A. H.*, 317 Or App at 699 (citing *Dept. of Human Services v. C. Z.*, 236 Or App 436, 442, 236 P3d 791 (2010)).

This case is factually dense, and a detailed recitation would not serve the parties on appeal. Thus, we state only the facts necessary to explain our disposition. The juvenile court established jurisdiction over the children in January 2023 on the following bases: (1) "[f]ather is unable to protect the children from abuse and neglect by [mother]"; and (2) "[f]ather is unable to protect the children from unsafe individuals, drug paraphernalia, illicit substances in the home creating a risk of harm and failed to obtain proper medical and dental care for the child[ren]." DHS facilitated visits with father, first with all the children at once, which Kindred Support Services' parent educator described as chaotic. On her recommendation, and after father began parenting education sessions, DHS coordinated separate visits with father for each child. During that period, the children began to see therapists at New Directions Northwest (NDN) to work through the abuse and neglect they had experienced at home.

N and S eventually disclosed to their therapists that during visits with father, he would whisper instructions to them to keep secrets and made them feel unsafe. The therapists wrote a joint letter recommending that DHS discontinue visits with father until he put forth significant effort to understand the children's experiences and demonstrated a willingness and ability to protect them from further abuse in the home. DHS discontinued visits in November 2023, around the same time that father walked out of his oldest daughter's counseling appointment after she confronted him about his actions making N and S feel unsafe. Father did not engage in any family counseling after that incident, and prior to that, he had only attended one of N's appointments and had not shown up to any of S's. Nevertheless, DHS continued to offer father services, facilitated meetings to attempt to get father

reengaged, referred him to receive an alternative mental health assessment, and offered intensive parent training. At that point, father stated that he had lost trust in NDN and DHS, and he requested a permanency hearing shortly thereafter. DHS then sought to change N and S's permanency plans from reunification to guardianship.

Following the permanency hearing, the juvenile court issued a letter opinion ruling that DHS had made reasonable efforts, that father's progress was insufficient, and that it was in the best interests of N and S to change their permanency plans to guardianship. The court's judgment followed, and father timely appealed.

When determining whether DHS made reasonable efforts under ORS 419B.476(2)(a), we must evaluate DHS's efforts "in light of the bases for jurisdiction identified in the juvenile court's judgment." *Dept. of Human Services v. C. H.*, 373 Or 26, 50, 559 P3d 395 (2024). DHS's efforts to make possible the safe return of a child to a parent's care are reasonable when, looking at the totality of the circumstances, "the agency has taken appropriate steps under the circumstances to give parents a full and fair opportunity to remediate the bases for jurisdiction to become at least minimally adequate parents." *Id.*

In this case, the juvenile court made extensive findings regarding DHS's efforts to reunify the children with father, all of which find support in the record. Notably, the court found "that [f]ather disengaged voluntarily from any services or contact with the children seven months prior to the permanency hearing," and despite that, DHS "continued to make reasonable efforts to engage * * * father in the children's counseling and activities and continued to request a proper mental health evaluation from [f]ather."

Father argues that to the extent that the primary impediment to reunification became the children's estrangement from father, DHS was required to help father remediate that issue to make reunification possible. *See Dept. of Human Services v. H. K.*, 321 Or App 733, 749, 517 P3d 1044 (2022). But DHS did continue to offer services to father that would work toward remediating the distance that

he voluntarily put between them. That the estrangement between father and children was not resolved before the permanency hearing does not preclude a reasonable efforts determination. *See, e.g.*, *Dept. of Human Services v. S. S.*, 337 Or App 270, 275-76, 562 P3d 670 (2025) (upholding the juvenile court's reasonable efforts determination when mother and daughter were estranged prior to the permanency hearing). Evidence in the record is sufficient to support the juvenile court's determination that DHS made reasonable efforts to reengage father and provide him a full and fair opportunity to remediate the bases for jurisdiction.

Addressing father's alternative argument that the court relied on extrinsic facts in making its determination, we disagree. The facts that the children had their own mental health needs and that father needed to seek mental health treatment were fairly implied by the original adjudicated bases because "a reasonable parent would \*\*\* have known \*\*\* that he or she needed to address the condition or circumstance exemplified by those facts." *T. L.*, 287 Or App at 763. Thus, father was on notice that he would need to engage in services relating to his own and the children's mental health treatment. To reunify father with children safely, the court found that father needed to understand the abuse and neglect the children experienced and gain insight into his role in failing to protect them from it, and in the future, preventing it. The juvenile court's concerns for the children and father's mental health are directly related to the original adjudicated bases, and thus, do not qualify as extrinsic facts. This case is also distinguishable from cases where the court impermissibly relied on facts extrinsic to the jurisdictional bases because father had not made sufficient progress to ameliorate the original bases. *Id.* (holding that the juvenile court impermissibly relied almost entirely on the estrangement that had developed over the life of the case, when the parent had ameliorated the original jurisdictional bases).

We see no legal error in the juvenile court's reasonable efforts determination and, accordingly, affirm the court's ruling to change N and S's permanency plans from reunification to guardianship.

Affirmed.