No. 436 May 14, 2025 551

***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of S. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. M.,
*Appellant.*

Washington County Circuit Court
24JU02778; A185702

Thomas A. Goldman, Judge pro tempore.

Argued and submitted on March 20, 2025; on respondent's motion to dismiss filed February 18, 2025, appellant's response filed March 18, 2025, and respondent's reply filed March 25, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sarah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Kyleigh Gray, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Pagán, Judge, and Walters, Senior Judge.

SHORR, P. J.

Motion to dismiss denied; appeal affirmed.

**SHORR, P. J.**

In this juvenile dependency case, mother appeals from the jurisdictional judgment entered in September 2024, regarding her child, S.[1] She raises three assignments of error. First, that the juvenile court erred in exercising jurisdiction over S based on its own allegation that "mother exposes the child to unsafe individuals which places the child at risk of harm"; second, that the juvenile court erred in asserting dependency jurisdiction over S because "mother has been subjected to domestic violence by the father and she is unable to protect the child from the father's unsafe and violent behaviors, which places the child at risk of harm"; and third, that the court erred in asserting dependency jurisdiction over S. The Department of Human Services (DHS) has moved to dismiss, asserting that the appeal is moot because the juvenile court has since dismissed jurisdiction over S. DHS has not met its burden of persuasion, so we deny its motion to dismiss. On the merits, however, we conclude that the juvenile court did not err, and, therefore, affirm.

Mother gave birth to S in August 2015. Mother had had a brief relationship with father, but he and mother were no longer together when S was born. Mother raised S as a single mother, along with two other children, who were from a previous relationship. In August 2023, mother reconnected with father and introduced father and S to each other. Mother and her three children were living in a house with her mother—S's maternal grandmother—at that time. In late August, father began to live at the house with mother and the other family members. However, grandmother kicked father out by the end of October after he had been hospitalized for organ failure due to excessive alcohol consumption. Mother and father stayed in various locations until they secured a room together in a shelter at the beginning of January 2024. Mother's two boys lived primarily with their grandmother and S went back and forth between grandmother's home and the shelter.

In April 2024, DHS caseworker, Amanda Ivie, began investigating a hotline call about suspected violence between mother and father. DHS filed a dependency petition

---

[1] Father is not a party to this appeal.

in May 2024; S was eight years old at that time. DHS alleged that S's "condition or circumstances [were] such as to endanger [her] welfare" and that S was within the jurisdiction of the court under ORS 419B.100(1)(c). There were five jurisdictional bases listed in the petition:

> "A.   The mother's substance abuse impairs her judgment and interferes with her ability to safely parent the child.

> "B.   The mother's mental health impairs her judgment and interferes with her ability to safely parent the child.

> "C.   The mother has been subjected to domestic violence by the father and she is unable to protect the child from the father's unsafe and violent behaviors, which places the child at risk of harm.

> "D.   The father's substance abuse impairs his judgment and interferes with his ability to safely parent the child.

> "E.   The father has subjected the mother to domestic violence, which places the child at risk of harm."

After DHS became involved, father moved out of the shelter and into his parents' home. S continued to live with mother at the shelter.

The juvenile court held a jurisdictional trial over two days in September 2024. A few days before the trial, mother informed the DHS caseworker, Alexis Burdick, that she had broken off her relationship with father and that she "has been covering up his addiction, and she is very concerned for his health" and that over the last three weeks she had been "starting to recognize signs and have concerns that he has been intoxicated more" and that "he is able to hide it really well."

At trial, mother denied that there was domestic violence between her and father and provided explanations for injuries she had sustained, such as falling down or being scratched by a dog. However, mother's longtime friend and mother's sister each testified about mother being afraid of father and the fighting that would occur between them. There was also testimony that S had been present when father "headbutted" mother and caused her nose to bleed. After

hearing the testimony of witnesses and considering the exhibits, the juvenile court dismissed the jurisdictional bases A and B. However, it determined that DHS had proven allegation C.[2] In addition, the court stated, "I am adding allegation F, which states that the Mother exposes the child to unsafe individuals, which places the child at risk of harm." The court stated, "I am finding that because throughout this case there was ample discovery and evidence about unsafe people, [grand] mom, sister, [father], all these people that you know and feel to be unsafe that are constantly around your child." The juvenile court found that S was within the jurisdiction of the court and entered a judgment reflecting its decision. Mother appealed.

Before turning to the merits, we briefly address whether this case is moot. After mother filed her notice of appeal, DHS moved the juvenile court to dismiss jurisdiction, and the court did so; a judgment terminating jurisdiction and dismissing the commitment of S to DHS was entered on November 27, 2024. DHS moved to dismiss the appeal as moot, because, in its view, our decision in the matter will not have any practical effect on the rights of the parties. *See Dept. of Human Services v. A. B.*, 362 Or 412, 426, 412 P3d 1169 (2018) (a party moving to dismiss an appeal as moot must show that the decision being challenged on appeal will have no further practical effect on the parties' rights). In response, mother asserts that the appeal is not moot because the jurisdictional judgment will disadvantage her in future child-welfare investigations and domestic relations matters, curtail her employment and volunteer opportunities—including presenting a barrier to work in the early childhood education field and to volunteer at her daughter's school—and carry significant social stigma. DHS contends that all of mother's assertions are speculative or are legally insufficient to render this case justiciable.

The Supreme Court has explained that

"[t]he moving party's burden to prove that resolving the case will have no practical effect includes the burden of establishing that any collateral consequences either do not exist or are legally insufficient. The moving party is not

---

[2] The juvenile court also determined that DHS had proved allegations D and E that pertained to father.

required to imagine all possible collateral consequences and then disprove each of them. Rather, the nonmoving party must identify any collateral consequences that he or she contends has the effect of producing the required practical effects of a judicial decision. Once the nonmoving party does so, the party moving for dismissal must demonstrate that those identified collateral consequence either [do] not exist or [are] legally insufficient.

"Ultimately, [i]t will be up to the appellate court to determine the existence and significance of the identified collateral consequences. But unless the moving party persuades the appellate court that the dismissal is warranted, the appeal is not moot."

*Dept. of Human Services v. T. J. N.*, 371 Or 650, 657-58, 540 P3d 540 (2023) (brackets in original; citations and internal quotation marks omitted). Having considered the parties' arguments, we conclude that DHS failed to meet its burden of persuasion as it relates to the collateral consequences mother identified regarding future domestic relations proceedings related to her two sons and their father, who are not involved in this juvenile proceeding, as well as mother's future employment in early childhood education and a "flag" on her background check.

Mother argues that a decision in her favor in this appeal would put her in a much better position to seek a future modification of custody and parenting time regarding her two sons. DHS responds that a change of custody would require a substantial change in circumstances and that, given the timing of the various judgments and legal standard for custody modification, a change in the status of this dependency judgment would not afford mother the opportunity to seek a custody change. However, DHS does not address mother's assertion that prevailing on appeal could favorably affect her parenting time and potential modification thereof, and we are not persuaded that resolution of this appeal would have no practical effect on the separate domestic relations matter. Similarly, mother, who previously worked in early childhood education, asserted that she "learned that she now has a 'flag' on her background check that prompts additional scrutiny and investigation by anyone looking to hire her for a preschool teaching position."

DHS did not rebut that portion of mother's argument and, as a result, failed to meet its burden of persuasion to show that mother would not suffer any collateral employment consequences.[3] We deny DHS's motion to dismiss as moot.

In mother's first assignment of error, she contends that the juvenile court erred in asserting dependency jurisdiction over S based on its own allegation that "mother exposes the child to unsafe individuals which places the child at risk of harm." Mother did not preserve that claim of error, but she asserts that she was not required to preserve it, or, in the alternative, that the juvenile court's error constitutes plain error and that we should exercise our discretion to review and correct it. DHS responds that mother's failure to preserve her claimed error is not excused and argues that the claimed error is not plain. We agree with DHS on both points.

Preservation is excused only in limited circumstances. "When there is no practical ability to raise the issue below because the issue did not arise until the court entered the judgment, preservation is not required." *Dept. of Human Services v. A. H.*, 317 Or App 697, 705, 505 P3d 1064 (2022) (internal quotation marks omitted). Here, the court announced as part of its oral ruling that it was adding a jurisdictional basis. At the conclusion of the court proceeding, the court asked the parties if there were any questions. No one asked the court to clarify anything, and mother did not take the opportunity to object to the portion of the ruling it now claims was error. Under the circumstances here, where mother had an opportunity to raise a concern or object to the court's addition of a jurisdictional basis, but did not do so, her failure to preserve the claimed error is not excused.

Mother also seeks plain error review. An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). Mother acknowledges that ORS 419B.809(6) states

---

[3] Having concluded that DHS has not met its burden of persuasion on certain claimed collateral consequences, we need not address every consequence identified by mother.

that "[t]he court, on motion of an interested party or on its own motion, may at any time direct that the petition be amended. If the amendment results in a substantial departure from the facts originally alleged, the court shall grant such continuance as the interests of justice may require." Mother contends that the court did not entertain any motion by any party, and it did not make its own motion; had the court done so, mother argues, she would have had an opportunity to ask for a continuance so that she could mount a defense to the court's expanded theory of harm. We disagree with mother that any error here is plain. As noted, ORS 419B.809(6) states that the court "on its own motion, may *at any time*" cause the petition to be amended (emphasis added). Although the court did not state that it was making a *motion*, the words it used served the same function. It is not obvious and beyond reasonable dispute that the juvenile court could not amend the petition in the manner that it did, under ORS 419B.809(6). Therefore, we reject mother's first assignment of error.

Mother contends in her second assignment of error that the juvenile court erred in asserting dependency jurisdiction over S because "mother has been subjected to domestic violence by the father and she is unable to protect the child from the father's unsafe and violent behaviors, which places the child at risk of harm." Mother argues that DHS failed to prove that any risk attendant to father's historical violence toward mother was current at the time of trial. In response, DHS asserts that the evidence was sufficient to support the juvenile court's conclusion that father's historical violence continued to pose an ongoing risk of harm to S at the time of the trial.

We "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). "To establish a basis for juvenile court jurisdiction for purposes of ORS 419B.100(1)(c), the state must prove, by a preponderance of the evidence, ORS 419B.310(3), that a child's welfare is endangered

because, under the totality of the circumstances, there is a current threat of serious loss or injury to the child that is reasonably likely to be realized." *Dept. of Human Services v. K. C. F.*, 282 Or App 12, 19, 383 P3d 931 (2016) (internal quotation marks omitted).

Mother argues that it was undisputed that she and father were not living together at the time of the trial and that they had been living separately for months. Mother also argues that by the time of trial, she had ended her relationship with father altogether and that DHS did not present any evidence to controvert mother's testimony to that effect. In essence, mother contends that any risk of harm to S was speculative, rather than a current and ongoing threat.

Having considered the record, we disagree with mother that the juvenile court erred. As DHS recounts, the evidence before the juvenile court included testimony about more than one incident of violence by father against mother and that S was present for at least one of those incidents. There was testimony by a child abuse pediatrician who explained the risk of harm to a child when exposed to domestic violence in their household. And there was testimony that DHS was concerned that mother had continued to deny that there had been domestic violence between her and father and concerned that the relationship might not be completely over despite mother claiming that it was.

Burdick testified that "[o]ften times *** it takes a few tries for survivors [of domestic violence] to really get away from the perpetrator. There is [a] thought cycle where there is that level of dependency, and often they will go back to the abuser." Burdick further explained that mother was "isolated" and did not have "supports other than [father] and his family." Mother's sister testified that on multiple occasions when mother was living at the shelter, she would go over to her mother's home because she and father were arguing and fighting. Mother would say that she was "done" and "not going back" and express that she could not live like this. But then within hours, mother would change her mind and "she would always leave every single time and go back." According to mother, the relationship had ended just days prior to the trial and, despite ending the relationship,

mother had continued to go over to father's parents' home, where father was living, to see his parents who were her "main support." The court, as part of its ruling, stated to mother, "Your ongoing relationship with [father] is problematic. I know he is father. He is always going to be father." The court also stated, "I have a lot of concerns about the fact that you are still going over to where he lives. I know that is your support network right now. I am not going to change anything about that. That is not something I do, but I have concerns about that." Under the totality of the circumstances, the record was legally sufficient to support the juvenile court's findings and its exercise of jurisdiction over S.

In mother's third assignment of error, which is predicated on her other assignments, she contends that the juvenile court erred in asserting jurisdiction over S because DHS failed to prove any allegation against mother. Having concluded that the juvenile court did not err in the other ways asserted by mother, we reject her third assignment of error.

Motion to dismiss denied; appeal affirmed.