730 October 1, 2025 No. 863

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of S. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

S. M.,
*Respondent,*

*v.*

M. Q.,
*Appellant.*

Umatilla County Circuit Court
23JU05660; A186322

Robert W. Collins, Jr., Judge.

Submitted July 28, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Elena C. Stross, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Stacy M. Chaffin, Assistant Attorney General, filed the brief for respondent Department of Human Services.

Christa Obold Eshleman and Youth, Rights & Justice filed the brief for respondent S. M.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

## PAGÁN, J.

Father appeals a judgment continuing dependency jurisdiction with a plan of reunification for his two-year-old child, S.[1] Father argues that the juvenile court erred in concluding that father had made insufficient progress for S to be returned home and in consequently continuing jurisdiction over S.[2] For the reasons explained below, we conclude that the juvenile court did not err and therefore affirm.

The juvenile court issued a shelter order for S in November 2023, when he was one year old, due to mother's substance abuse. ODHS originally placed child with father with a safety plan in place that included keeping mother away from the home. Within a month, father allowed mother to move back into his home, S ingested fentanyl and cocaine, and S would have died but for receiving emergency medical care. The parties and the court all presumed that the drugs were related to mother's use. S has suffered seizures since that incident.

In January 2024, the court took dependency jurisdiction over S on the bases that (1) mother's substance abuse impairs her judgment and interferes with her ability to safely parent the child; (2) mother's mental health problems interfere with her ability to safely parent the child; and (3) father failed to adequately supervise and protect S while S was in his care and custody, which resulted in S overdosing on fentanyl.

ODHS has offered a variety of services to father over the life of the case, including a number of services that the court did not specifically order ODHS to provide, such as batterer intervention services and random drug testing.

---

[1]  Mother is not a party to this appeal.

[2]  ORS 419B.470 provides when the juvenile court must hold a permanency hearing in a dependency matter to determine whether the current plan—in this case, reunification—should continue or be changed. ORS 419B.476 details the procedures for holding such hearings. If the case plan at the time of the hearing is reunification, then ORS 419B.476(2)(a) requires the court to

"determine whether [ODHS] has made reasonable efforts *** to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home. In making its determination, the court shall consider the ward's health and safety the paramount concerns."

Father actively engaged in some of the offered services while declining others. He successfully completed parenting classes and was active in supervised visitations. The child is well bonded with father and enjoys spending time with him. Father declined most of the unordered services, however, including refusing to do random drug testing until a week before the November 2024 permanency hearing, when he voluntarily submitted to urinalysis. The results of that test were not yet available at the time of the hearing.

A week before the November 2024 hearing, ODHS was trying to locate mother, who had refused any drug treatment to that point, to let her know about an available bed at a local in-patient drug treatment facility. Mother was found at father's house. Father would not let ODHS into the house.

When asked at the permanency hearing about mother's drug use, father admitted to knowing that mother is still using fentanyl and that fentanyl is deadly. He said that mother was trying to stop, that she was doing it on her own because she didn't want to go to rehab, and that it had been about two weeks since he had seen mother high. Father claimed to have recently told mother that, if ODHS ever returned S to him, mother could not be with him unless "she's in rehab or doing her program" and that mother agreed. Father acknowledged that he does not have the skills to keep mother away from drugs and that the only way to protect S from mother's drug use would be to keep mother away from him and not let her live with him.

The juvenile court found that father had made insufficient progress for S to be safely returned home. Father challenges that determination. We are bound by the court's factual findings if there was any evidence in the record to support them and review for legal error. *Dept. of Human Services v. Y. B.*, 372 Or 133, 149, 546 P3d 255 (2024). We conclude that the trial court did not err.

Father focuses on his successful completion of certain services, but "mere participation" in services does not necessarily establish sufficient progress for a child's safe return home. *Dept. of Human Services v. S. N.*, 250 Or App 708, 718, 282 P3d 901, *rev den*, 352 Or 564 (2012). In this

case, having considered all of the evidence admitted at the hearing, we agree with ODHS and S that, on this record, the juvenile court could find (as it did) that father lacks a sufficient understanding and appreciation of the deadly risk that mother poses to S and therefore remains unable to ensure S's safety in his care and custody, specifically S's safety with respect to exposure to fentanyl.

Only one aspect of the court's decision gives us pause, which is the court's reliance on father's reluctance to engage in random drug testing as part of its reasoning on insufficient progress. *See ODHS v. T. L.*, 287 Or App 753, 763, 403 P3d 488 (2017) (the court may not rely on facts that are not "fairly implied" by the jurisdictional bases). An ODHS caseworker testified that she had referred father for voluntary random UAs because father denies substance abuse but mother "has stated that he provides her with substances and uses with her." In closing argument, ODHS acknowledged that father had not been ordered to engage in drug testing (or a number of the other services that ODHS wanted him to do) but argued that agreeing to unordered services would demonstrate "an attitude change," whereas not doing so showed that "his attitude has not changed."

In its ruling, the court stated:

"The big issue was the exposure to drugs that occurred in [father's] home that resulted in the child having an overdose. Apparently, the belief is, and the facts suggest that that was primarily mother's use, but mother also reports that father provided her drugs on occasion, is aware of her use and has used with her.

"Now, they didn't order him to participate in - in drug rehabilitation services, but his - if - if those allegations are correct and there is some reason to believe that he may have participated in that because he's repeatedly brought her back into her home and the situation this week is almost the same. He refuses to let anyone in the home to inspect. He refuses to give UA's until just a week ago. He's done nothing to demonstrate that the situation has been remedied and the evidence is quite contrary."

On appeal, ODHS argues that father's reluctance to submit to random UAs was only one small consideration

among many, and that it was a reasonable consideration because father was fairly on "notice that he must ensure that his home is free of *any* controlled substances that might cause harm to [S]." And S argues on appeal that father not agreeing to UAs "was relevant to whether [S] might still be exposed to drugs in father's home, even without mother's presence"; that a positive UA would allow the juvenile court to "infer an increased likelihood of [S] being exposed to drugs"; and that father refusing UAs allows "an inference that he had not ameliorated the various ways in which [S] might be exposed to drugs if in father's care."

Ultimately, we are persuaded that, on this particular record, it was not reversible error for the juvenile court to consider father's reluctance to engage in random drug testing on a voluntary basis as one piece of relevant data in its analysis. Although father denied any drug use, mother told ODHS that father used with her and bought her drugs. S suffered a nearly fatal drug exposure while in father's care, at a time when father was on notice of the danger that mother's drug use posed to S, and S now has a seizure disorder since that incident. Given his age and history, S is at extremely high risk if he is exposed to fentanyl again. Under the totality of the circumstances, it is fairly implied within the jurisdictional bases that father cannot use drugs while caring for S or permit mother or anyone else to use drugs in the home or around S.

Father's credibility and understanding around his own drug use, and particularly his use with mother, was an issue that he was on notice that the court would be considering. *See Dept. of Human Services v. A. H.*, 320 Or App 511, 519, 514 P3d 121 (2022) (finding a parent's codependency with coparent was factually related to underlying conditions of abuse in home for children, despite not being a specific basis for jurisdiction.); *see also Dept. of Human Services v. T. R.*, 251 Or App 6, 282 P2d 969 (2012) (affirming a trial court's finding that parents' refusal to provide information about how their child was injured "completely undermined" their credibility, despite otherwise participating in programs).

Affirmed.